UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION,<br><br>                Plaintiff,<br><br>                v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION and UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>                Defendants. | No. 19-cv-11311 |

## COMPLAINT

### INTRODUCTION

1. The American Civil Liberties Union ("ACLU") brings this action under the Freedom of Information Act ("FOIA") to force U.S. Customs and Border Protection ("CBP") and U.S. Immigration and Customs Enforcement ("ICE") to release records about the agencies' acquisition and use of "cell site simulators," powerful surveillance devices that target cell phones. While a Congressional investigation confirms that CBP and ICE have spent many millions on the devices, which were originally developed for military and intelligence agency use, and recent reporting indicates that ICE is now actively using them to locate and arrest people, to date the agencies have produced no responsive records. This information is of immense public significance, not only to shine a light on the government's use of powerful surveillance technology in the immigration context, but also to assess whether its use of this

technology complies with constitutional and legal requirements and is subject to appropriate oversight and control.

2.      Cell site simulators, also known as "Stingrays" or "IMSI catchers," impersonate a wireless service provider's cell tower, prompting cell phones and other wireless devices in the area to communicate with them. They are commonly used in two ways: to collect unique numeric identifiers associated with phones in a given area, and to ascertain the location of a phone when the officers know the numeric identifiers associated with it but do not know precisely where it is. Both of these methods raise privacy concerns. Collecting unique identifiers of all phones in an area necessarily results in collection of the location data of many bystanders. And using cell site simulators to ascertain the location of a specific cell phone can reveal that it is in a constitutionally protected place, such as a home, that has traditionally been immune from search unless law enforcement agents obtain a warrant based on probable cause. Further, even when a cell site simulator is used to locate a particular suspect's phone, it necessarily solicits identifying information from bystanders' phones as well. Cell site simulators also may interfere with nearby cell phones' connection to the cellular network. Although numerous law enforcement agencies across the country have released significant information about their use of cell site simulators in recent years, little information is publicly known about the use of cell site simulators by ICE and CBP or what safeguards are in place to prevent abuse.

3.      Here, the public's interest in the release of the requested information is particularly high in light of the ongoing public debate about the propriety of ICE and CBP actions targeting people for arrest, detention, and deportation. There is deep public concern surrounding such ICE and CBP operations, including whether there are appropriate limits on agents' discretion, whether particularly vulnerable populations are being protected from unjustified targeting, and

whether agents are using acceptable means to locate and detain people. Disclosure of the records that Plaintiff seeks through this action would contribute significantly to the public's understanding of how the Defendants use invasive surveillance technology both at the border and within American communities, and whether they are complying with constitutional and legal limitations on unreasonable searches.

4. Plaintiff now asks the Court to issue an injunction requiring the Defendants to conduct adequate searches for records and produce responsive records. Plaintiff also seeks an order enjoining the Defendants from assessing fees for the processing of the Request.

## PARTIES

5. The American Civil Liberties Union is a nationwide, non-profit, nonpartisan organization with its principal place of business in New York, New York. The ACLU's mission is to maintain and advance civil rights and civil liberties and to ensure that the U.S. government acts in compliance with the Constitution and laws of the United States. Among the rights advanced by the ACLU that are implicated by the subject of the Request are the rights of people who are targeted, arrested, and detained by federal immigration authorities, the right to freedom of speech and association under the First Amendment, the right to be free of unreasonable government searches and seizures under the Fourth Amendment, and the right to due process under the Fifth and Fourteenth Amendments. The ACLU regularly publishes information and analysis concerning government activities derived from FOIA requests and other sources.

6. Defendant U.S. Immigration and Customs Enforcement is a federal law enforcement agency under the Department of Homeland Security ("DHS"), which is an agency within the meaning of 5 U.S.C. § 552(f)(1).

7. U.S. Customs and Border Protection is a federal law enforcement agency under DHS.

JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

9. Venue lies in the Southern District of New York pursuant to 5 U.S.C. § 552(a)(4)(B), including because it is the district in which the Plaintiff has its principal place of business.

FACTS

Background: ICE and CBP Own Cell Site Simulators and Use Them

10. A December 2016 report of the U.S. House of Representatives Committee on Oversight and Government Reform ("House Oversight Committee Report") disclosed that in fiscal years 2010–2014, ICE and CBP respectively spent approximately $10,500,000 and $2,500,000 to acquire and use cell site simulator technology.[1] According to the report, as of 2016 ICE possessed 59 cell site simulators and CBP possessed 33 cell site simulators.

11. News reports based on publicly docketed federal search warrant applications and related materials have further indicated that ICE actively uses cell site simulators in investigations within the United States, including to locate people for arrest and prosecution on immigration-related charges.[2]

The Records Requested

12. On May 19, 2017, Plaintiff submitted the Request to CBP and ICE. A true and accurate copy of the Request is attached hereto as Exhibit A.

---

[1] *See* House Comm. On Oversight & Gov't Reform, *Law Enforcement Use of Cell-Site Simulation Technologies: Privacy Concerns & Recommendations* 14 (Dec. 19, 2016), https://web.archive.org/web/20170612123223/https://oversight.house.gov/wp-content/uploads/2016/12/THE-FINAL-bipartisan-cell-site-simulator-report.pdf.

[2] *See* Robert Snell, *Feds Use Anti-Terror Tool to Hunt Undocumented Immigrants Amid Trump's Crackdown*, Detroit News, May 18, 2017, http://www.detroitnews.com/story/news/local/detroit-city/2017/05/18/cell-snoopingfbi-immigrant/101859616/; Jose Pagliery, *ICE in New York Has a Spy Tool to Hunt Undocumented Immigrants Via Their Cell Phones*, Univision, Oct. 17, 2019, https://www.univision.com/local/nueva-york-wxtv/ice-in-new-york-has-a-spy-tool-to-hunt-undocumented-immigrants-via-their-cell-phones.

13. The Request sought ten categories of records, including:

    a. Policy directives, guidance documents, legal memoranda, policy memoranda, training materials, or similar records created on or after October 19, 2015 concerning the use of cell site simulators by ICE and CBP agents, employees, or partners as well as any communications with Congress concerning implementation of or updates to policies governing cell site simulator use;

    b. Any records reflecting whether ICE or CBP does use or is permitted to use cell site simulators in furtherance of civil immigration enforcement operations and any guidance concerning whether and how relevant policies apply to uses of cell site simulators in furtherance of immigration-related investigations that are not criminal in nature;

    c. Records from October 19, 2015 to present detailing the total number of times a cell-site simulator is deployed in the jurisdiction of each field office, the number of deployments at the request of other agencies, and the number of times the technology is deployed in emergency circumstances;

    d. Records since the last annual report reflecting the number of times ICE and CBP have requested assistance of other law of other law enforcement agencies (including federal, state, local, and foreign) in deploying cell site simulators;

    e. Records regarding the implementation of an auditing program to ensure deletion of data collected by cell site simulators;

    f. All applications submitted to state and federal courts since January 1, 2013 for orders or search warrants authorizing the use of cell site simulators in ICE and CBP investigations or operations as well as any warrants or orders, denials of warrants or orders, and returns of warrants associated with those applications;

    g. Records dated or created on or after January 1, 2013 concerning the purchase of cell site simulator equipment and related software and hardware; and

    h. Records concerning the use of evidence derived or resulting from the use of a cell site simulator in immigration court proceedings.

14. Plaintiff requested expedited processing of the Request on the basis of a "compelling need" for the requested records as defined in 5 U.S.C. § 552(a)(6)(E)(v)(II).

15. Plaintiff sought a waiver of search, review, and duplication fees on the ground that disclosure of the requested records is "in the public interest" and because it is "likely to

contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

16. Plaintiff also sought a limitation of fees on the ground that Plaintiff qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

Defendants' Responses to the Request

*ICE*

17. On May 22, 2017, ICE sent Plaintiff a letter that acknowledged receipt of the Request, granted a fee waiver, and denied expedited processing.

18. On June 13, 2017, Plaintiff appealed ICE's denial of expedited processing on the grounds that Plaintiff is primarily engaged in disseminating information to the public through its communications with news media and directly with the general public, and that there is an urgent need to inform the public of the actual or alleged Federal Government activity at issue in the Request.

19. On September 20, 2017, ICE provided a "final response" to the request. The response letter characterized the Request as seeking release of the records described in item 1 of the Request, but was silent as to the other nine categories of records sought by Plaintiff. The letter stated that ICE had conducted a search of the ICE Office of Enforcement and Removal Operations (ERO), the ICE office of Homeland Security Investigations (HSI), the ICE Office of Acquisitions (OAQ), and the ICE Office of Congressional Relations (OCR) and "no records responsive to your request were found."

20. On September 20, 2017, Plaintiff responded to ICE's September 20, 2017, response letter, asking the agency to "clarify whether the final response is meant to respond to the full FOIA request, or if it only concerns the first category of information listed in our request."

21. By letter dated October 18, 2017, ICE responded by construing Plaintiff's September 20, 2017, letter as an administrative appeal and "determin[ing] that new search(es) or, modifications to the existing search(es), could be made." The letter further stated that "ICE is remanding your request to the ICE FOIA Office for processing and re-tasking to the appropriate agency/office(s) to obtain any responsive documents."

22. Since the letter in October 2017, Plaintiff has received no further communications and no responsive records from ICE. A true and accurate copy of Plaintiff's relevant correspondence with ICE is attached hereto as Exhibit B.

23. ICE possesses records responsive to the Request. As the House Oversight Committee Report indicates, ICE possessed at least 59 cell site simulators as of 2016. Further, news reports based on publicly docketed ICE search warrant applications and related materials demonstrate that ICE uses cell site simulators in immigration enforcement operations across the United States. In March 2017, for example, an ICE Deportation Officer obtained a warrant in the Eastern District of Michigan to use a cell site simulator in order to locate and arrest a person suspected of "Unlawful Re-entry after Deportation"—in other words, an undocumented immigrant.[3] More recently, in May 2019, an ICE Deportation Officer obtained a warrant in the

---

[3] Snell, *Feds Use Anti-Terror Tool to Hunt Undocumented Immigrants Amid Trump's Crackdown*, *supra* note 2; *see also* Application for a Search Warrant, No. 2:17-mc-50368-DML (E.D. Mich. Mar. 9, 2017).

Eastern District of New York to use a cell site simulator in order to locate and arrest a person for the same reason.[4]

24. Plaintiff has exhausted all administrative remedies because ICE has failed to comply with the time limit for responding to FOIA requests.

### CBP

25. On May 24, 2017, CBP sent Plaintiff three communications concerning the request: (1) an email denying Plaintiff's request for expedited processing, (2) a "final response" stating that CBP had "conducted a comprehensive search of files within the CBP databases" but was "unable to locate or identify any responsive records," and (3) a determination that the request for a fee waiver was "not applicable as the request is not billable."

26. On June 19, 2017, Plaintiff appealed CBP's final response on the ground that the agency conducted an inadequate search for responsive records. Plaintiff pointed out that it is not plausible that CBP lacks responsive records, given that the House Oversight Committee Report indicated that CBP possessed at least 33 cell site simulators as of 2016.

27. CBP's asserted lack of responsive records is further implausible given that binding Department of Homeland Security policy requires that "[e]ach Component that uses cell-site simulators shall develop operational policy or procedures to govern the use of this technology," that "Components shall implement an auditing program" concerning compliance with the DHS policy, and that "[e]ach field office shall report to its Component headquarters annual records

---

[4] Pagliery, *ICE in New York Has a Spy Tool to Hunt Undocumented Immigrants Via Their Cell Phones*, *supra* note 2; *see also* Affidavit in Support of Application for a Search Warrant, No. 1:19-mc-01314-ST (E.D.N.Y. May 16, 2019).

reflecting the total number of times a cell-site simulator is deployed in the jurisdiction," among other information.[5]

28. By letter dated July 13, 2017, CBP stated that, "[p]ursuant to your appeal, this office has conducted a *de novo* thorough search of CBP offices . . . . and were advised that there were no records which are responsive to your request." Consequently, "[t]he decision of the CBP FOIA Division is affirmed."

29. Since the letter in July 2017, Plaintiff has received no further communications and no responsive records from CBP. A true and accurate copy of Plaintiff's relevant correspondence with CBP is attached hereto as Exhibit C.

30. Plaintiff has exhausted all administrative remedies with CBP.

## CAUSES OF ACTION

31. Defendants have failed to produce records responsive to the Request.

32. Defendants' failure to promptly make available the records sought by the Request violates FOIA, 5 U.S.C. § 552(a)(3)(A), and Defendants' corresponding regulations.

33. Defendants' failure to make an adequate search for records responsive to the Request violates FOIA, 5 U.S.C. § 552(a)(3)(C), (D), and Defendants' corresponding regulations.

34. Plaintiff is entitled to a waiver of all search, review, processing, and duplication fees in connection with the Request, and CBP's failure to grant Plaintiff's request for waiver and limitation of fees violates FOIA, 5 U.S.C. 552(a)(4)(A), and Defendants' corresponding regulations.

35. Plaintiff has exhausted administrative remedies to the extent required by law.

---

[5] *See* Department of Homeland Security, Policy Directive 047-02, Department Policy Regarding the Use of Cell-Site Simulator Technology (Oct. 19, 2015), https://www.dhs.gov/sites/default/files/publications/Department%20Policy%20Regarding%20the%20Use%20of%20Cell-Site%20Simulator%20Technology.pdf.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court to GRANT the following relief:

1. Order that Defendants shall conduct adequate searches for records responsive to the Request;

2. Order that Defendants shall produce all requested records forthwith, or alternatively on an expedited schedule established by the Court;

3. Enjoin Defendants from charging Plaintiff search, review, processing, and duplication fees in connection with responding to the Request;

4. Award Plaintiff costs and reasonable attorney fees in the action; and

5. Grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

*/s/ Nathan Freed Wessler*
Nathan Freed Wessler
Brett Max Kaufman
Alexia Ramirez*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
bkaufman@aclu.org
nwessler@aclu.org

Robert Hodgson
Christopher Dunn
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300
rhodgson@nyclu.org

\* Law school graduate; application for admission to the bar forthcoming

December 11, 2019