# EXHIBIT B

**From:**   US DHS Immigration and Customs Enforcement FOIA Office
**To:**      Nathan Wessler
**Subject:**  ICE FOIA Request 2017-ICFO-28863
**Date:**    Monday, May 22, 2017 4:51:03 PM

May 22, 2017

Nathan Wessler
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004-2400

**RE:   ICE FOIA Case Number 2017-ICFO-28863**

Dear Mr. Wessler:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated May 19, 2017, your request for a waiver of all assessable FOIA fees, and your request for expedited treatment. Your request was received in this office on May 22, 2017. Specifically, you requested The ACLU seeks the release of the following records (including reports, memoranda, guidance documents, instructions, training documents, formal and informal presentations, directives, contracts or agreements, memoranda of understanding, and written or electronic communications):Any policy directives, guidance documents, memoranda, training materials, or similar records created on or after October 19, 2015, governing or concerning use of cell site simulators by Immigrations and Customs Enforcement and Customs and Border Protection agents, employees, or partners, including any policy or guidance document that cites Department of Homeland Security Policy Directive 047-02 ("Department Policy Regarding Use of Cell-Site Simulator Technology"),7 as well as any communications with Congress concerning implementation of or updates to DHS Policy Directive 047-02 and other policies governing cell site simulator use. See request for addition request and further details.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, ICE processes FOIA requests according to their order of receipt. Although ICE's goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10-day extension of this time period. As your request seeks numerous documents that will necessitate a thorough and wide-ranging search, ICE will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you care to narrow the scope of your request, please contact our office. We will make every effort to comply with your request in a timely manner.

ICE evaluates fee waiver requests under the legal standard set forth above and the fee waiver policy guidance issued by the Department of Justice on April 2, 1987, as incorporated into the Department of Homeland Security's Freedom of Information Act regulations[1].  These regulations set forth six factors to examine in determining whether the applicable legal standard for fee waiver has been met.  I have considered the following factors in my evaluation of your request for a fee waiver:

(1) Whether the subject of the requested records concerns "the operations or activities of the government";

(2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities;

(3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons;

(4) Whether the contribution to public understanding of government operations or activities will be "significant";

(5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and

(6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

Upon review of your request and a careful consideration of the factors listed above, I have determined to grant your request for a fee waiver.

Your request for expedited treatment is hereby denied.

Under the DHS FOIA regulations, expedited processing of a FOIA request is warranted if the request involves "circumstances

in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," 6 C.F.R. § 5.5(e)(1)(i), or "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information," 6 C.F.R. § 5.5(e)(l)(ii). Requesters seeking expedited processing must submit a statement explaining in detail the basis for the request, and that statement must be certified by the requester to be true and correct.  6 C.F.R. § 5.5(e)(3).

Your request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1). You have not established that lack of expedited treatment in this case will pose an imminent threat to the life or physical safety of an individual.  The information sought in your request is retrospective and you have not established that the information would have a bearing on immediate or resultant future situations.  In addition, you are not primarily engaged in the dissemination of information to the public. You have not shown that you have the ability to educate the public beyond your limited constituency, nor have you established with the requisite specificity why you feel there is an urgency to inform your limited audience about past ICE actions. Qualifying urgency would need to exceed the public's right to know about government activity generally.  Finally, you did not offer any supporting evidence of public interest that is any greater than the public's general interest in the information you have requested.

If you are not satisfied with the response to this request, you have the right to appeal following the procedures outlined in the DHS regulations at 6 C.F.R. § 5.9. Should you wish to do so, you must send your appeal and a copy of this letter, within 90 days of the date of this letter, to:

U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor
U.S. Department of Homeland Security
500 12th Street, S.W., Mail Stop 5900
Washington, D.C. 20536-5900

Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

ICE has queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2017-ICFO-28863**. Please refer to this identifier in any future correspondence. To check the status of an ICE FOIA/PA request, please visit http://www.dhs.gov/foia-status. Please note that to check the status of a request, you must enter the 2016-ICFO-XXXXX or 2017-ICFO-XXXXX tracking number. If you need any further assistance or would like to discuss any aspect of your request, please contact the FOIA office. You may send an e-mail to ice-foia@ice.dhs.gov, call toll free (866) 633-1182, or you may contact our FOIA Public Liaison in the same manner. Additionally, you have a right to right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Regards,


ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Telephone: 1-866-633-1182
Visit our FOIA website at www.ice.gov/foia

---

[1] 6 CFR § 5.11(k).

**ACLU**

AMERICAN CIVIL LIBERTIES UNION

June 13, 2017

U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor
U.S. Department of Homeland Security
500 12th Street, S.W., Mail Stop 5900
Washington, D.C. 20536-5900

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
SUSAN N. HERMAN
*PRESIDENT*

ANTHONY D. ROMERO
*EXECUTIVE DIRECTOR*

ROBERT B. REMAR
*TREASURER*

       **Re:**     **Freedom of Information Act Appeal
               FOIA Request # 2017-ICFO-28863**

To Whom It May Concern:

    The American Civil Liberties Union and the American Civil Liberties
Union Foundation (together, the "ACLU") write to appeal the Immigration and
Customs Enforcement ("ICE") interim response to Freedom of Information Act
("FOIA") Request No. 2017-ICFO-28863 (the "Request," attached as Exhibit
A). This Request, dated May 19, 2017, seeks all records relating to ICE's use of
cell site simulators.

    In a letter dated May 22, 2017 (the "Response," attached as Exhibit B),
ICE denied the ACLU's request for expedited processing. ICE denied the
request on the grounds that the ACLU did not satisfy either applicable category
under 5 U.S.C. § 552(a)(6)(E)(v) and 6 C.F.R. § 5.5(e)(1); namely, that it failed
to demonstrate that the information is needed urgently to prevent imminent harm
pursuant to 5 U.S.C. § 552(a)(6)(E)(v)(I) and 6 C.F.R. § 5.5(e)(1)(i), and that the
ACLU is not primarily engaged in the dissemination of information to the public
and that the information requested does not warrant urgent dissemination
pursuant to 5 U.S.C. § 552(a)(6)(E)(v)(II) and 6 C.F.R. § 5.5(e)(1)(iv). *See*
Response. The ACLU appeals ICE's denial of expedited processing.

    The ACLU is an organization primarily engaged in disseminating
information through its communications with the news media and directly to the
general public through newsletters and online content, and there is an urgent
need to inform the public of the actual or alleged Federal Government activity at
issue in this FOIA Request. This Request therefore meets the statutory
requirements for "compelling need" in 5 U.S.C. § 552(a)(6)(E)(v)(II) and
accordingly, expedited processing is warranted under 6 C.F.R. § 5.5(e)(1) and
5 U.S.C. § 552(a)(6)(E)(v).

    **The ACLU is primarily engaged in disseminating information to the
    public.**

In denying the ACLU's expedited processing request, ICE stated that the ACLU failed to show that it has "the ability to educate the public beyond [its] limited constituency." *See* Response. The ACLU disseminates information to the public through press releases, social media, its website, blogs posts, a regularly-published print magazine, and other publications. *See* Request at 5–8. The ACLU regularly shares information, including information obtained through FOIA requests, with its 3.2 million social media followers and its 2.6 million email subscribers. *Id.* at 5. It also shares information with over 620,000 people through its bi-annually published magazine *STAND. Id.*

When an organization such as the ACLU "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience," then it is "primarily engaged in disseminating information." *ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004). An organization that "disseminates information regarding civil rights and voting rights to educate the public, promote[s] effective civil rights laws, and ensure[s] their enforcement," much like the ACLU, was found to be "primarily engaged in disseminating information." *Leadership Conference on Civil Rights v. Gonzalez*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005). Therefore, the ACLU disseminates information as understood pursuant to 5 U.S.C. § 552(a)(6)(E)(v)(II) and 6 C.F.R. § 5.5(e)(1)(iv).

The ACLU disseminates information to the public through regular publications, including newsletters that report on and analyze civil liberties-related current events. The ACLU distributes a newsletter to more than 1.2 million members. In addition, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including FOIA requests. *See* Request at 5. The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties. *Id.* at 7.

The ACLU distributes and analyzes much of the information it obtains via FOIA and other sources through its heavily visited website: www.aclu.org. There, the ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily.[1] *Id.* The ACLU's websites also serve as clearinghouses for news about ACLU cases, analysis about case developments, and case-related documents. *Id.* Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant Congressional or executive branch action, government documents obtained through FOIA, and further in-depth analytic and educational multi-media features. *Id.*

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[1] *See Blogs*, ACLU (last visited June 9, 2017), https://www.aclu.org/blog.

2

In addition, the ACLU website includes many features on information obtained through FOIA requests.[2] For example, the ACLU's "Executive Order 12,333 FOIA" webpage, which concerns government surveillance activities, contains commentary about the ACLU's FOIA request, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, and links to the many disclosed documents themselves.[3] Similarly, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[4]

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through FOIA requests. *See* Request at 8. For example, the ACLU created an original chart that provides the public and news media with a comprehensive index of Bush-era Office of Legal Counsel memos relating to interrogation, detention, rendition, and surveillance.[5] Similarly, the ACLU produced a summary of documents released in response to a FOIA request about the FISA Amendments Act,[6] and a chart of original statistics about the Defense Department's use of national security letters based on its own analysis of records obtained through FOIA.[7]

The ACLU's reach is further broadened by its communications with the news media. The ACLU routinely issues press releases to call attention to

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[2] *See, e.g.*, ACLU v. CIA *FOIA Case for Records Relating to Drone Killings*, ACLU (last updated Dec. 30, 2016), http://www.aclu.org/national-security/predator-drone-foia; ACLU v. DOJ—*FOIA Case for Records Relating to Killing of Three U.S. Citizens*, ACLU (last updated Dec. 30, 2016), http://www.aclu.org/national-security/anwar-al-awlaki-foia-request; ACLU v. Department of Defense, ACLU (last updated Aug. 18, 2015), https://www.aclu.org/cases/aclu-v-department-defense; *Mapping the FBI*, ACLU (last visited June 9, 2017), http://www.aclu.org/mappingthefbi; *Bagram FOIA*, ACLU (last updated Apr. 18, 2013), https://www.aclu.org/cases/bagram-foia; ACLU v. DOJ—*Lawsuit to Enforce NSA Warrantless Surveillance FOIA Request*, ACLU (last visited June 9, 2017), http://www.aclu.org/safefree/nsaspying/30022res20060207.html; *Patriot FOIA*, ACLU (last visited June 9, 2017), https://www.aclu.org/patriot-foia; *Privacy and Surveillance*, ACLU (last visited June 9, 2017), http://www.aclu.org/spyfiles; *National Security Letters FOIA*, ACLU (last visited June 9, 2017), http://www.aclu.org/safefree/nationalsecurity letters/32140res20071011.html.

[3] *Executive Order 12,333—FOIA Lawsuit*, ACLU (last updated July 5, 2016), https://www.aclu.org/cases/executive-order-12333-foia-lawsuit.

[4] The Torture Database (last visited June 9, 2017), http://www.torturedatabase.org. *See also* ACLU v. Department of Defense, *supra* note 2.

[5] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/safefree/olcmemos_2009_0305.pdf.

[6] *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU (last visited June 9, 2017), https://www.aclu.org/files/pdfs/natsec/faafoia20101129/20101129Summary.pdf.

[7] *Statistics on NSLs Produced by Department of Defense*, ACLU (last visited June 9, 2017), https://www.aclu.org/files/safefree/nationalsecurityletters/released/nsl_stats.pdf.

documents obtained through FOIA requests, as well as other breaking news, and ACLU attorneys are frequently interviewed for news stories about documents released through ACLU FOIA requests. *See* Request at 6. The news media regularly reports on information obtained by the ACLU through FOIA requests. Major news outlets including the *New York Times*, the *Washington Post*, and CNN regularly release information to the general public that was obtained through ACLU FOIA requests.[8] By sharing information with the media, the ACLU disseminates information to a substantial portion of the general public.

**The information sought in this FOIA Request must be shared with the public urgently.**

In denying the ACLU's request for expedited processing, ICE characterized the information sought as "retrospective" and stated that the ACLU failed to clearly establish "why there is an urgency to inform [its] limited audience about past ICE actions." *See* Response. Seeking "retrospective" information is an inherent part of the FOIA process, as the public may only obtain government records once they have been created—and the public's interest in government action is not diminished simply because the action has already occurred. Moreover, much of the information sought in this FOIA Request cannot properly be characterized as "retrospective," or applying only to past actions. The request seeks records regarding purchases of cell site simulators, as well as policy directives, guidance documents, training materials, and other documents—all of which would provide substantial insight into ICE's current and future use of these devices. *See* Request at 3–4.

Public concern regarding ICE's use of cell site simulators to locate individuals is widespread, particularly in light of the recent increase in deportation of undocumented immigrants. There is widespread public interest in ICE's processes for locating, identifying, and deporting people.[9] For example, a

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[8] *See, e.g.*, Charlie Savage, *Pentagon Releases Small Portion of Photos from Detainee Abuse Case*, The New York Times (Feb. 5, 2016), https://www.nytimes.com/2016/02/06/us/politics/pentagon-photos-detainee-abuse.html?rref=collection%2Ftimestopic%2FAmerican%20Civil%20Liberties%20Union; Jerry Markon, *ACLU Says FBI Uses Racial Profiling Against Muslims, Other Minorities*, The Washington Post (Oct. 20, 2011), https://www.washingtonpost.com/politics/aclu-says-fbi-uses-racial-profiling-against-muslims-other-minorities/2011/10/20/gIQAN3Ob1L_story.html?utm_term=.d8e784726b9f; Jennifer Rizzo, *Documents Raise Questions on Treatment of Detainees*, CNN (Jan. 22, 2011), http://www.cnn.com/2011/US/01/22/detainee.documents. *See also* Joseph Goldstein, *New York Police Are Using Covert Cellphone Trackers, Civil Liberties Group Says*, The New York Times (Feb. 11, 2016), https://www.nytimes.com/2016/02/12/nyregion/new-york-police-dept-cellphone-tracking-stingrays.html (reporting on documents regarding police use of cell site simulators obtained via FOIA by the ACLU's New York state affiliate, the New York Civil Liberties Union).

[9] *See, e.g.*, Tal Kopan, *Democrats, Advocates Question ICE Raids After Hundreds of Arrests*, CNN (Feb. 14, 2017), http://www.cnn.com/2017/02/10/politics/democrats-question-ice-enforcement-raids/index.html; Suzanne Gamboa, *Lawmakers, After Meeting with ICE, Say All Undocumented Immigrants at Risk of Deportation*, NBC News (Feb. 16, 2017),

recent news story out of Detroit, Michigan revealed that ICE used a cell site simulator to locate an individual suspected of "unlawful reentry" into the United States. *See* Request at 1–2. And as detailed in the Request, numerous national media organizations have also investigated the use of cell site simulators by other government agencies, reflecting the public interest in this issue. For example, *Wired* recently reported on research conducted at the University of Washington regarding government use of cell site simulators,[10] and the *New York Times* reported on the New York Police Department's use of cell site simulators in criminal investigations.[11] Furthermore, courts that have addressed the constitutionality and legality of government use of cell site simulators have commented on the corrosive effect of the lack of government transparency regarding the uses and capabilities of the technology, and have explained that greater transparency is necessary for courts to effectively conduct oversight. *See, e.g.*, *United States v. Patrick*, 842 F.3d 540, 546 (7th Cir. 2016) (Wood, C.J., dissenting) ("This is the first court of appeals case to discuss the use of a cell-site simulator, trade name 'Stingray.' We know very little about the device, thanks mostly to the government's refusal to divulge any information about it."); *In re Application of the U.S. for an Order Relating to Tels. Used by Suppressed*, No. 15 M 0021, 2015 WL 6871289, at *1–2 (N.D. Ill. Nov. 9, 2015) (discussing difficulties of judges obtaining accurate information about cell site simulator technology); *State v. Andrews*, 134 A.3d 324, 339 (Md. Ct. Spec. App. 2016) ("We perceive the State's actions in this case to protect the [cell site simulator] technology, driven by a nondisclosure agreement to which it bound itself, as detrimental to its position and inimical to the constitutional principles we revere.").

The information at issue must be urgently shared with the public in order to address many of the concerns surrounding ICE's use of cell site simulators. These concerns include but are not limited to questions about whether ICE uses such devices for civil immigration enforcement operations, how frequently ICE uses them, whether ICE has taken steps to protect the privacy of the general public by deleting bystander data that is collected by cell site simulators, and whether individuals subject to deportation proceedings are informed when a cell site simulator was used to locate them. *Id.* at 9. Media inquiries into government

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

http://www.nbcnews.com/news/latino/lawmakers-ice-says-all-undocumented-immigrants-risk-deportation-n722101; Nicholas Kulish, Caitlin Dickerson & Ron Nixon, *Immigration Agents Discover New Freedom to Deport Under Trump*, The New York Times (Feb. 25, 2017), https://www.nytimes.com/2017/02/25/us/ice-immigrant-deportations-trump.html; Joel Rose, *Once Routine, ICE Check-Ins Now Fill Immigrants in U.S. Illegally with Anxiety*, NPR (Apr. 18, 2017), http://www.npr.org/2017/04/18/524365639/once-routine-ice-check-ins-now-fill-immigrants-in-u-s-illegally-with-anxiety.

[10] Andy Greenberg, *Researchers Use Ridesharing Cars to Sniff Out a Secret Spying Tool*, Wired (June 2, 2017), https://www.wired.com/2017/06/researchers-use-rideshares-sniff-stingray-locations.

[11] Joseph Goldstein, *New York Police Are Using Covert Cellphone Trackers, Civil Liberties Group Says*, The New York Times (Feb. 11, 2016), https://www.nytimes.com/2016/02/12/nyregion/new-york-police-dept-cellphone-tracking-stingrays.html.

use of cell site simulators, as well as explanations by courts that government disclosures have been inadequate, jointly demonstrate the exceptional public interest in this matter. Accordingly, there is an urgent need for greater public dissemination of information regarding ICE's use of cell site simulators.

In light of how little information is available about government use of cell site simulators and the potential privacy invasions that the public may be unknowingly subjected to through their use, the urgent need for information about ICE's use of cell site simulators far exceeds "the public's right to know about government activity generally." *See* Response.

*          *          *

For the aforementioned reasons, as well as those set forth in the Request, ICE's decision to deny expedited processing was in error. ICE should grant expedited processing and promptly process the Request.

Thank you for your attention to this matter. Please furnish all further correspondence to:

> Nathan Freed Wessler
> American Civil Liberties Union
> 125 Broad Street—18th Floor
> New York, New York 10004
> T: 212.549.3500
> F: 212.549.2654
> nwessler@aclu.org

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

Respectfully,

Nathan Freed Wessler
American Civil Liberties Union
Foundation
125 Broad Street—18th Floor
New York, New York 10004
T: 212.549.2500
F: 212.549.2654
nwessler@aclu.org

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

# EXHIBIT A

**LEGAL
DEPARTMENT**



May 19, 2017

U.S. Customs and Border Protection
Freedom of Information Act Officer
1300 Pennsylvania Avenue, NW Room 3.3D
Washington, D.C. 20229
Phone: 202-344-1610

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, D.C. 20536-5009
Fax: 202-732-4266
Email: ICE-FOIA@dhs.gov

**AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION**

NATIONAL OFFICE
125 BROAD STREET, 18TH
FL.
NEW YORK, NY 10004-2400
T/212.549.2500
WWW.ACLU.ORG

OFFICERS AND
DIRECTORS
SUSAN N. HERMAN
*PRESIDENT*

ANTHONY D. ROMERO
*EXECUTIVE DIRECTOR*

ROBERT B. REMAR
*TREASURER*

Re:   **Request Under Freedom of Information Act
      (Expedited Processing & Fee Waiver/Limitation Requested)**

To Whom It May Concern:

The American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU")[1] submit this Freedom of Information Act ("FOIA") request (the "Request") for records pertaining to use of cell site simulators by Immigration and Customs Enforcement ("ICE") and Customs and Border Protection ("CBP").

## I. Background

On May 18, 2017, the Detroit News reported on a case where Immigration and Customs Enforcement agents, working with the FBI Violent Gangs Task Force, obtained a search warrant authorizing use of a cell site simulator to locate an undocumented immigrant suspected of "Unlawful Re-

---

[1] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, educates the public about civil rights and civil liberties issues across the country, directly lobbies legislators, and mobilizes the American Civil Liberties Union's members to lobby their legislators. The American Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

entry after Deportation."[2] Although it has been publicly known for several years that ICE has purchased cell site simulator technology,[3] this is the first time the ACLU has seen evidence of use of the technology in a particular ICE investigation or operation.

Cell site simulators, also called IMSI catchers (in reference to the unique identifier—or international mobile subscriber identity—of wireless devices), impersonate a wireless service provider's cell tower, prompting cell phones and other wireless devices to communicate with them. These devices are often called "Stingrays," after a leading model produced by the Florida-based Harris Corporation.[4] Cell site simulators are commonly used in two ways: to collect unique numeric identifiers associated with phones in a given location, or to ascertain the location of a phone when the officers know the numbers associated with it but don't know precisely where it is. Both of these uses raise privacy concerns. Collecting unique identifiers of all phones in a particular location inherently collects location data on many innocent people. And using a cell site simulator to ascertain the location of a specific cell phone can reveal that it is in a constitutionally protected place, such as a home, that has traditionally been immune from search unless law enforcement agents obtain a warrant based on probable cause. Moreover, even when law enforcement is using a cell site simulator to locate a specific suspect, the device also sweeps up information about bystanders' phones.

Despite the Department of Homeland Security's issuance in 2015 of a policy directive governing use of cell site simulators by DHS components in furtherance of criminal investigations,[5] and ICE's 2012 release of records

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

[2] Robert Snell, *Feds Use Anti-Terror Tool to Hunt the Undocumented*, Detroit News, May 18, 2017, http://www.detroitnews.com/story/news/local/detroit-city/2017/05/18/cell-snooping-fbi-immigrant/101859616/.

[3] *See* Letter from Catrina M. Pavlik-Keenan, FOIA Officer, U.S. Immigration and Customs Enforcement, to Christopher Soghoian, Center for Applied Cybersecurity Research, Indiana University, Re: ICE FOIA Case Number 2012FOIA5235 (Sept. 19, 2012), *available at* https://www.documentcloud.org/documents/479397-stingrayfoia.html.

[4] Other models of cell site simulators marketed by Harris Corp. include the "Triggerfish," "Kingfish," and "Hailstorm." *See* Ryan Gallagher, *Meet the Machines that Steal Your Phone's Data*, Ars Technica (Sept. 25, 2013), http://arstechnica.com/tech-policy/2013/09/meet-the-machines-that-steal-your-phones-data/. Similar devices, often called "DRT boxes" or "dirtboxes" are marketed by Digital Receiver Technology (DRT). *See* Devlin Barrett, *Americans' Cellphones Targeted in Secret U.S. Spy Program*, Wall St. J. (Nov. 13, 2014), http://online.wsj.com/articles/americans-cellphones-targeted-in-secret-u-s-spy-program-1415917533.

[5] Department of Homeland Security, Policy Directive 047-02, Department Policy Regarding the Use of Cell-Site Simulator Technology (Oct. 19, 2015), https://www.dhs.gov/sites/default/files/publications/Department%20Policy%20Regarding%20the%20Use%20of%20Cell-Site%20Simulator%20Technology.pdf.

concerning purchase of cell site simulator technology,[6] little is publicly known about use of cell site simulators in ICE and CBP operations.

To provide the American public with information about use of invasive cell site simulator devices within the United States by ICE and CBP, the ACLU seeks such information through this FOIA request.

## II. Requested Records

The ACLU seeks the release of the following records (including reports, memoranda, guidance documents, instructions, training documents, formal and informal presentations, directives, contracts or agreements, memoranda of understanding, and written or electronic communications):

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

(1)     Any policy directives, guidance documents, memoranda, training materials, or similar records created on or after October 19, 2015, governing or concerning use of cell site simulators by Immigrations and Customs Enforcement and Customs and Border Protection agents, employees, or partners, including any policy or guidance document that cites Department of Homeland Security Policy Directive 047-02 ("Department Policy Regarding Use of Cell-Site Simulator Technology"),[7] as well as any communications with Congress concerning implementation of or updates to DHS Policy Directive 047-02 and other policies governing cell site simulator use;

(2)     Any records reflecting whether ICE or CBP does use or is permitted to use cell site simulators in furtherance of civil immigration enforcement operations, as opposed to in furtherance of criminal investigations, and any guidance concerning whether and how DHS Policy Directive 047-02 applies to uses of cell site simulators in furtherance of immigration-related investigations that are not criminal in nature;

(3)     From October 19, 2015 to the present, annual records reflecting the total number of times a cell-site simulator is deployed in the jurisdiction of each field office, the numbers of deployments at the request of other agencies, and the number of times the technology is deployed in emergency circumstances (collection of this information is required by DHS Policy Directive 047-02);

(4)     Since the date of the last annual record described in item 3, above, records reflecting the number of ICE and CBP investigations or

---

[6] ICE FOIA Case Number 2012FOIA5235, *available at* https://www.documentcloud.org/documents/479397-stingrayfoia.html.

[7] Department of Homeland Security, Policy Directive 047-02, Department Policy Regarding the Use of Cell-Site Simulator Technology (Oct. 19, 2015), https://www.dhs.gov/sites/default/files/publications/Department%20Policy%20Regarding%20the%20Use%20of%20Cell-Site%20Simulator%20Technology.pdf.

operations in which cell site simulators have been deployed, including information about the field office deploying the cell site simulator and whether those deployments were in support of criminal investigations of non-immigration-related offenses, criminal investigations of immigration-related offenses, or civil immigration enforcement operations;

(5)     Records reflecting the number of times ICE and CBP have requested the assistance of other law enforcement agencies (including federal, state, local, and foreign) in deploying cell site simulators;

(6)     Records regarding implementation of an auditing program to ensure deletion of data collected by cell site simulators, as required by DHS Policy Directive 047-02;

(7)     All applications submitted to state and federal courts since January 1, 2013, for orders or search warrants authorizing the use of cell site simulators in ICE and CBP investigations or operations (including investigations or operations as part of task forces or partnerships with other agencies), as well as any warrants or orders, denials of warrants or orders, and returns of warrants associated with those applications. If any responsive records are sealed, please provide the date, court, and docket number for each sealed document;

(8)     All requests to persons or offices within the Department of Homeland Security for supervisory or legal authorization to deploy cell site simulators;

(9)     Records dated or created on or after January 1, 2013 concerning the purchase of cell site simulator equipment and related software and hardware, including purchase orders, invoices, documentation of selection, sole source or limited source justification and approval documentation, communications, and other memoranda and documentation. This should include any purchase of cell site simulator equipment from the Harris Corporation (including, but not limited to, Stingray, Stingray II, Hailstorm, Triggerfish, Kingfish, Amberjack, and Harpoon devices), DRT (also known as Digital Receiver Technology), and other companies. At a minimum, please search the ICE Office of Acquisition Management for these record; and

(10)    Records concerning the use of evidence derived or resulting from use of a cell site simulator in immigration court proceedings, and the provision of notice to respondents in immigration court proceedings informing them that a cell site simulator was used.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive electronic records be provided electronically in their native file format, if possible.  Alternatively, the ACLU requests that the

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

4

records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

### III. Application for Expedited Processing

The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).[8] There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

A.   *The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute. 5 U.S.C. § 552(a)(6)(E)(v)(II).[9] Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[10]

The ACLU regularly publishes *STAND*, a print magazine that reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 620,000 people. The ACLU also publishes regular updates and alerts via email to over 2.6 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to over 3.2 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to

---

[8] *See also* 6 C.F.R. 5.5(e).

[9] *See also* 6 C.F.R. 5.5(e)(1)(ii).

[10] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g., Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

documents obtained through FOIA requests, as well as other breaking news,[11] and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[12]

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests.  This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[13]  The ACLU also

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

[11] *See, e.g.*, Press Release, American Civil Liberties Union, U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit; Press Release, American Civil Liberties Union, Secret Documents Describe Graphic Abuse and Admit Mistakes (June 14, 2016), https://www.aclu.org/news/cia-releases-dozens-torture-documents-response-aclu-lawsuit; Press Release, American Civil Liberties Union, U.S. Releases Targeted Killing Memo in Response to Long-Running ACLU Lawsuit (June 23, 2014), https://www.aclu.org/national-security/us-releases-targeted-killing-memo-response-long-running-aclu-lawsuit; Press Release, American Civil Liberties Union, Justice Department White Paper Details Rationale for Targeted Killing of Americans (Feb. 4, 2013), https://www.aclu.org/national-security/justice-department-white-paper-details-rationale-targeted-killing-americans; Press Release, American Civil Liberties Union, Documents Show FBI Monitored Bay Area Occupy Movement (Sept. 14, 2012), https://www.aclu.org/news/documents-show-fbi-monitored-bay-area-occupy-movement-insidebayareacom.

[12] *See, e.g.*, Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept, Feb. 8, 2017, https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program/ (quoting ACLU attorney Hugh Handeyside);  Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes,* Wash. Post, Aug. 6, 2016, http://wapo.st/2jy62cW (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program,* ABC, June 15, 2016, http://abcn.ws/2jy40d3 (quoting ACLU staff attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian, Mar. 17, 2016, https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU attorney Nate Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret,* NPR, Dec. 9, 2015, http://n.pr/2jy2p71 (quoting ACLU project director Hina Shamsi).

[13] *See, e.g.*, Hugh Handeyside, *New Documents Show This TSA Program Blamed for Profiling Is Unscientific and Unreliable — But Still It Continues* (Feb. 8, 2017, 11:45 AM), https://www.aclu.org/blog/speak-freely/new-documents-show-tsa-program-blamed-profiling-unscientific-and-unreliable-still; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site* (Nov. 22, 2016, 3:15 PM), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most* (Aug. 8, 2016, 5:30 PM), https://www.aclu.org/blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most;  Nathan Freed Wessler, *ACLU- Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida* (Feb. 22, 2015, 5:30 PM), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order 12333* (Oct. 30, 2014, 3:29 PM),

regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog.  The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features.  *See* https://www.aclu.org/multimedia.  The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org.  The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused.  The ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments, and an archive of case-related documents.  Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant Congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.

The ACLU website includes many features on information obtained through the FOIA.[14]  For example, the ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333; ACLU, *ACLU Eye on the FBI: Documents Reveal Lack of Privacy Safeguards and Guidance in Government's "Suspicious Activity Report" Systems* (Oct. 29, 2013), https://www.aclu.org/sites/default/files/assets/eye_on_fbi_-_sars.pdf.

[14] *See, e.g.*, Nathan Freed Wessler & Dyan Cortez, *FBI Releases Details of 'Zero-Day' Exploit Decisionmaking Process* (June 26, 2015, 11:00 AM), https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; *ACLU v. DOJ – FOIA Case for Records Relating to the Killing of Three U.S. Citizens*, ACLU Case Page, https://www.aclu.org/national-security/anwar-al-awlaki-foia-request; *ACLU v. Department of Defense*, ACLU Case Page, https://www.aclu.org/cases/aclu-v-department-defense; *Mapping the FBI: Uncovering Abusive Surveillance and Racial Profiling*, ACLU Case Page, https://www.aclu.org/mappingthefbi; *Bagram FOIA*, ACLU Case Page https://www.aclu.org/cases/bagram-foia; *CSRT FOIA*, ACLU Case Page, https://www.aclu.org/national-security/csrt-foia; *ACLU v. DOJ – Lawsuit to Enforce NSA Warrantless Surveillance FOIA Request*, ACLU Case Page, https://www.aclu.org/aclu-v-doj-lawsuit-enforce-nsa-warrantless-surveillance-foia-request; *Patriot FOIA*, ACLU Case Page, https://www.aclu.org/patriot-foia; *NSL Documents Released by DOD*, ACLU Case Page, https://www.aclu.org/nsl-documents-released-dod?redirect=cpredirect/32088.

litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves.  Similarly, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[15]

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA.  For example, through compilation and analysis of information gathered from various sources—including information obtained from the government through FOIA requests—the ACLU created an original chart that provides the public and news media with a comprehensive summary index of Bush-era Office of Legal Counsel memos relating to interrogation, detention, rendition, and surveillance.[16]  Similarly, the ACLU produced an analysis of documents released in response to a FOIA request about the TSA's behavior detection program[17]; a summary of documents released in response to a FOIA request related to the FISA Amendments Act[18]; a chart of original statistics about the Defense Department's use of National Security Letters based on its own analysis of records obtained through FOIA requests[19]; and an analysis of documents obtained through FOIA requests about FBI surveillance flights over Baltimore.[20]

The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request.  The records requested are not sought for commercial use and the requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

[15] *The Torture Database*, ACLU, https://www.thetorturedatabase.org; *see also Countering Violent Extremism FOIA Database*, ACLU, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database*, ACLU, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; *Targeted Killing FOIA Database*, ACLU, https://www.aclu.org/foia-collection/targeted-killing-foia-database.

[16] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/safefree/ olcmemos_2009_0305.pdf.

[17] *Bad Trip: Debunking the TSA's 'Behavior Detection' Program*, ACLU (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_report-v02.pdf.

[18] *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU, https://www.aclu.org/files/pdfs/natsec/faafoia20101129/20101129Summary.pdf.

[19] *Statistics on NSL's Produced by Department of Defense*, ACLU, https://www.aclu.org/other/statistics-nsls-produced-dod.

[20] Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights.

B.     *The records sought are urgently needed to inform the public about actual or alleged government activity.*

These records are urgently needed to inform the public about actual or alleged government activity.  *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).[21]  Specifically, the requested records relate to use of cell site simulators by ICE and CBP.  Law enforcement use of cell site simulators is the subject of widespread public controversy and media attention, as reflected in a steady torrent of news coverage in national and local outlets.[22]  Also of deep public concern are questions surrounding ICE and CBP operations targeting undocumented immigrants, including whether there are appropriate limits on agents' discretion, whether particularly vulnerable populations are being protected from unjustified targeting, , and whether agents are using acceptable means to locate and detain people.[23]  Amid reports of a spike in arrests of undocumented immigrants by

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

[21] *See also* 6 C.F.R. 5.5(e)(1)(ii).

[22] *See, e.g.*, *See, e.g.*, Tom Jackman, *D.C. Appeals Court Poised to Rule on Whether Police Need Warrants for Cellphone Tracking*, Wash. Post, Apr. 18, 2017, https://www.washingtonpost.com/news/true-crime/wp/2017/04/18/d-c-appeals-court-poised-to-rule-on-whether-police-need-warrants-for-cellphone-tracking/; Erin Kelly, *Bipartisan Bill Seeks Warrants for Police Use of 'Stingray' Cell Trackers*, USA Today, Feb. 15, 2017, https://www.usatoday.com/story/news/politics/onpolitics/2017/02/15/bipartisan-bill-seeks-warrants-police-use-stingray-cell-trackers/97954214/; Brad Heath, *U.S. Marshals Secretly Tracked 6,000 Cellphones*, USA Today, Feb. 23, 2016, https://www.usatoday.com/story/news/2016/02/23/us-marshals-service-cellphone-stingray/80785616/; Joseph Goldstein, *New York Police Dept. Has Used Cellphone Tracking Devices Since 2008, Civil Liberties Group Says*, N.Y. Times, Feb. 11, 2016, https://www.nytimes.com/2016/02/12/nyregion/new-york-police-dept-cellphone-tracking-stingrays.html; Joel Kurth, *Michigan State Police Using Cell Snooping Devices*, Detroit News, Oct. 23, 2015, http://www.detroitnews.com/story/news/local/michigan/2015/10/22/stingray/74438668/; Glenn E. Rice, *Secret Cellphone Tracking Device Used by Police Stings Civil Libertarians*, Kan. City Star, Sept. 5, 2015, http://www.kansascity.com/news/business/technology/article34185690.html; Justin Fenton, *Baltimore Police Used Secret Technology to Track Cellphones in Thousands of Cases*, Baltimore Sun, Apr. 9, 2015, http://www.baltimoresun.com/news/maryland/baltimore-city/bs-md-ci-stingray-case-20150408-story.html; Fred Clasen-Kelly, *CMPD's Cellphone Tracking Cracked High-Profile Cases*, Charlotte  Observer, Nov. 22, 2014, http://www.charlotteobserver.com/news/local/crime/article9235652.html; Devlin Barrett, *Americans' Cellphones Targeted in Secret U.S. Spy Program*, Wall St. J., Nov. 13, 2014, http://online.wsj.com/articles/americans-cellphones-targeted-in-secret-u-s-spy-program-1415917533; Jason Leopold, *Police in Washington, DC Are Using the Secretive 'Stingray' Cell Phone Tracking Tool*, Vice News, Oct. 17, 2014, https://news.vice.com/article/police-in-washington-dc-are-using-the-secretive-stingray-cell-phone-tracking-tool; Joel Kurth & Lauren Abdel-Razzaq, *Secret Military Device Lets Oakland Deputies Track Cellphones*, Detroit News, Apr. 4, 2014, http://www.detroitnews.com/article/20140404/SPECIAL/304040043/Secret-military-device-lets-Oakland-deputies-track-cellphones; Michael Bott & Thom Jensen, *9 Calif. Law Enforcement Agencies Connected to Cellphone Spying Technology*, ABC News 10, Mar. 6, 2014, http://www.news10.net/story/news/investigations/watchdog/2014/03/06/5-california-law-enforcement-agencies-connected-to-stingrays/6147381/.

[23] *See, e.g.*, *U.S.: Immigrant Arrests Soar Under Trump, Fewer Deported*, Assoc. Press, May 17, 2017, https://www.nytimes.com/aponline/2017/05/17/us/ap-us-trump-immigration-

ICE and CBP under the current administration, there is a pressing need for accurate information about the means used by ICE and CBP to identify and locate immigrants whom the agencies seek to detain and potentially deport.  The records sought relate to a matter of widespread and exceptional media interest: use of cell site simulators by federal immigration authorities in immigration enforcement operations. Indeed, within hours of the Detroit News' initial report about the unsealed warrant in Michigan, a number of other news outlets had picked up the story.[24]

Given the foregoing, the ACLU has satisfied the requirements for expedited processing of this Request.

### IV. Application for Waiver or Limitation of Fees

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii).[25]  The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use.  5 U.S.C. § 552(a)(4)(A)(ii)(II).

A.  *The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU.*

As discussed above, credible media and other investigative accounts underscore the substantial public interest in the records sought through this Request.  Given the ongoing and widespread media attention to this issue, the records sought will significantly contribute to public understanding of an issue

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

enforcement.html?_r=0; Alan Gomez, *Immigration Arrests Up 38% Nationwide Under Trump*, USA Today, May 17, 2017, https://www.usatoday.com/story/news/world/2017/05/17/deportations-under-president-trump-undocumented-immigrants/101786264/.

[24] *See, e.g.*, Russel Brandom, *Feds are Using Stingray Cell-Trackers to Find Undocumented Immigrants*, The Verge, May 19, 2017, https://www.theverge.com/2017/5/19/15662968/immigration-ice-stingray-cell-site-simulator-deportation-arrest; Matthew Rozsa, *An Anti-Terrorism Device is Being Used to Find Undocumented Immigrants Through Their Cell Phones*, Salon, May 19, 2017, https://www.salon.com/2017/05/19/an-anti-terrorism-device-is-being-used-to-find-undocumented-immigrants-through-their-cell-phones/; Jeva Lange, *Federal Agents Have Started Using a Counter-Terrorism Device to Catch Undocumented Immigrants*, The Week, May 19, 2017, https://theweek.com/speedreads/700192/federal-agents-have-started-using-counterterrorism-device-catch-undocumented-immigrants.

[25] *See also* 6 C.F.R. 5.11(k)(1)(i)-(ii).

of profound public importance.  Because little specific information about use of cell site simulators by ICE and CBP is publicly available, the records sought are certain to contribute significantly to the public's understanding of this topic.

The ACLU is not filing this Request to further its commercial interest. As described above, any information disclosed by the ACLU as a result of this FOIA Request will be available to the public at no cost.  Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

B.      *The ACLU is a representative of the news media and the records are not sought for commercial use.*

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use.  5 U.S.C. § 552(a)(4)(A)(ii)(II).[26]  The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."  5 U.S.C. § 552(a)(4)(A)(ii)(III)[27]; *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. DOJ*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information").  The ACLU is therefore a "representative of the news media" for the same reasons it is "primarily engaged in the dissemination of information."

---

[26] *See also* 6 C.F.R. 5.11(k)(2)(iii).

[27] *See also* 6 C.F.R. 5.11(b)(6).

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media" as well.  *See, e.g.*, *Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[28]

On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[29]  As was true in those instances, the ACLU meets the requirements for a fee waiver here.

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

\*        \*        \*

Pursuant to applicable statutes and regulations, the ACLU expects a determination regarding expedited processing within 10 days.  *See* 5 U.S.C. § 552(a)(6)(E)(ii); 6 C.F.R. 5.5(e)(4).

If the Request is denied in whole or in part, the ACLU asks that you justify all deletions by reference to specific exemptions to FOIA.  The ACLU expects the release of all segregable portions of otherwise exempt material.  The ACLU reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

---

[28] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information / public education activities.  *See, e.g.*, *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; s*ee also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53–54.

[29] In May 2017, CBP granted a fee-waiver request regarding a FOIA request for documents related to electronic device searches at the border.  In May 2016, the FBI granted a fee-waiver request regarding a FOIA request issued to the DOJ for documents related to Countering Violent Extremism Programs.  In April 2013, the National Security Division of the DOJ granted a fee-waiver request with respect to a request for documents relating to the FISA Amendments Act.  Also in April 2013, the DOJ granted a fee-waiver request regarding a FOIA request for documents related to "national security letters" issued under the Electronic Communications Privacy Act.  In August 2013, the FBI granted the fee-waiver request related to the same FOIA request issued to the DOJ.  In June 2011, the DOJ National Security Division granted a fee waiver to the ACLU with respect to a request for documents relating to the interpretation and implementation of a section of the PATRIOT Act.  In March 2009, the State Department granted a fee waiver to the ACLU with regard to a FOIA request for documents relating to the detention, interrogation, treatment, or prosecution of suspected terrorists.

Thank you for your prompt attention to this matter.  Please furnish the applicable records to:

Nathan Freed Wessler
American Civil Liberties Union
125 Broad Street—18th Floor
New York, New York 10004
T: 212.549.2500
F: 212.549.2654
nwessler@aclu.org

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

**AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION**

Respectfully,

Nathan Freed Wessler
American Civil Liberties Union
    Foundation
125 Broad Street—18th Floor
New York, New York 10004
T: 212.549.2500
F: 212.549.2654
nwessler@aclu.org

13

# EXHIBIT B

**From:**     US DHS Immigration and Customs Enforcement FOIA Office
**To:**       Nathan Wessler
**Subject:**  ICE FOIA Request 2017-ICFO-28863
**Date:**     Monday, May 22, 2017 4:51:03 PM

May 22, 2017

Nathan Wessler
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004-2400

**RE:   ICE FOIA Case Number 2017-ICFO-28863**

Dear Mr. Wessler:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated May 19, 2017, your request for a waiver of all assessable FOIA fees, and your request for expedited treatment. Your request was received in this office on May 22, 2017. Specifically, you requested The ACLU seeks the release of the following records (including reports, memoranda, guidance documents, instructions, training documents, formal and informal presentations, directives, contracts or agreements, memoranda of understanding, and written or electronic communications):Any policy directives, guidance documents, memoranda, training materials, or similar records created on or after October 19, 2015, governing or concerning use of cell site simulators by Immigrations and Customs Enforcement and Customs and Border Protection agents, employees, or partners, including any policy or guidance document that cites Department of Homeland Security Policy Directive 047-02 ("Department Policy Regarding Use of Cell-Site Simulator Technology"),7 as well as any communications with Congress concerning implementation of or updates to DHS Policy Directive 047-02 and other policies governing cell site simulator use. See request for addition request and further details.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, ICE processes FOIA requests according to their order of receipt. Although ICE's goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10-day extension of this time period. As your request seeks numerous documents that will necessitate a thorough and wide-ranging search, ICE will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you care to narrow the scope of your request, please contact our office. We will make every effort to comply with your request in a timely manner.

ICE evaluates fee waiver requests under the legal standard set forth above and the fee waiver policy guidance issued by the Department of Justice on April 2, 1987, as incorporated into the Department of Homeland Security's Freedom of Information Act regulations[1].  These regulations set forth six factors to examine in determining whether the applicable legal standard for fee waiver has been met.  I have considered the following factors in my evaluation of your request for a fee waiver:

> (1) Whether the subject of the requested records concerns "the operations or activities of the government";

> (2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities;

> (3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons;

> (4) Whether the contribution to public understanding of government operations or activities will be "significant";

> (5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and

> (6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

Upon review of your request and a careful consideration of the factors listed above, I have determined to grant your request for a fee waiver.

Your request for expedited treatment is hereby denied.

Under the DHS FOIA regulations, expedited processing of a FOIA request is warranted if the request involves "circumstances

in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," 6 C.F.R. § 5.5(e)(1)(i), or "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information," 6 C.F.R. § 5.5(e)(l)(ii). Requesters seeking expedited processing must submit a statement explaining in detail the basis for the request, and that statement must be certified by the requester to be true and correct.  6 C.F.R. § 5.5(e)(3).

Your request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1). You have not established that lack of expedited treatment in this case will pose an imminent threat to the life or physical safety of an individual. The information sought in your request is retrospective and you have not established that the information would have a bearing on immediate or resultant future situations.  In addition, you are not primarily engaged in the dissemination of information to the public. You have not shown that you have the ability to educate the public beyond your limited constituency, nor have you established with the requisite specificity why you feel there is an urgency to inform your limited audience about past ICE actions. Qualifying urgency would need to exceed the public's right to know about government activity generally.  Finally, you did not offer any supporting evidence of public interest that is any greater than the public's general interest in the information you have requested.

If you are not satisfied with the response to this request, you have the right to appeal following the procedures outlined in the DHS regulations at 6 C.F.R. § 5.9. Should you wish to do so, you must send your appeal and a copy of this letter, within 90 days of the date of this letter, to:

U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor
U.S. Department of Homeland Security
500 12th Street, S.W., Mail Stop 5900
Washington, D.C. 20536-5900

Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

ICE has queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2017-ICFO-28863**. Please refer to this identifier in any future correspondence. To check the status of an ICE FOIA/PA request, please visit http://www.dhs.gov/foia-status. Please note that to check the status of a request, you must enter the 2016-ICFO-XXXXX or 2017-ICFO-XXXXX tracking number. If you need any further assistance or would like to discuss any aspect of your request, please contact the FOIA office. You may send an e-mail to ice-foia@ice.dhs.gov, call toll free (866) 633-1182, or you may contact our FOIA Public Liaison in the same manner. Additionally, you have a right to right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Regards,


ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Telephone: 1-866-633-1182
Visit our FOIA website at www.ice.gov/foia

---

[1] 6 CFR § 5.11(k).



**U.S. Department of Homeland Security**
500 12th ST. SW; STOP 5009
Washington, DC 20536-5009

June 20, 2017

Nathan Wessler
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004-2400

Dear Mr. Wessler:

The Department of Homeland Security has received your letter appealing the adverse determination of your Freedom of Information Act/Privacy Act (FOIA/PA) request by U.S. Immigration and Customs Enforcement. Your appeal, **postmarked *or* electronically transmitted** on **June 13, 2017**, was received on **June 19, 2017**.

The Government Information Law Division acknowledges your appeal request of **2017-ICFO-28863** and is assigning it number **2017-ICAP-00424** for tracking purposes.  Please reference this number in any future communications about your appeal.

A high number of FOIA/PA requests have been received by the Department.  Accordingly, we have adopted the court-sanctioned practice of generally handling backlogged appeals on a first-in, first-out basis.[1]  While we will make every effort to process your appeal on a timely basis, there may be some delay in resolving this matter.  Should you have any questions concerning the processing of your appeal, please contact the ICE FOIA Office/Public Liaison at (866) 633-1182, or by email at ice-foia@dhs.gov.

Sincerely,

/s/MCuestas  for

Erin Clifford
Chief
Government Information Law Division
ICE Office of the Principal Legal Advisor
U.S. Department of Homeland Security

---

[1] Appeals of expedited treatment denials will be handled on an expedited basis.

*Freedom of Information Act Office*

**U.S. Department of Homeland Security**
500 12th St SW, Stop 5009
Washington, DC  20536



September 20, 2017

Nathan Wessler
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004-2400

**RE:    ICE FOIA Case Number 2017-ICFO-28863**

Dear Mr. Wessler:

This letter is the final response to your Freedom of Information Act (FOIA) request to U.S.
Immigration and Customs Enforcement (ICE), dated May 19, 2017.  You have requested copies
of the following records:

The ACLU seeks the release of the following records (including reports, memoranda, guidance
documents, instructions, training documents, formal and informal presentations, directives,
contracts or agreements, memoranda of understanding, and written or electronic
communications):Any policy directives, guidance documents, memoranda, training materials, or
similar records created on or after October 19, 2015, governing or concerning use of cell site
simulators by Immigrations and Customs Enforcement and Customs and Border Protection
agents, employees, or partners, including any policy or guidance document that cites Department
of Homeland Security Policy Directive 047-02 ("Department Policy Regarding Use of Cell-Site
Simulator Technology"),7 as well as any communications with Congress concerning
implementation of or updates to DHS Policy Directive 047-02 and other policies governing cell
site simulator use.

ICE has considered your request under both the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5
U.S.C. § 552a.  Information about an individual that is maintained in a Privacy Act system of
records may be accessed by that individual[1] unless the agency has exempted the system of
records from the access provisions of the Privacy Act.[2]

ICE has conducted a search of the ICE Office of Enforcement and Removal Operations (ERO),
the ICE Office of Homeland Security Investigations (HSI), the ICE Office of Acquisitions
(OAQ), and the ICE Office of Congressional Relations (OCR) for records responsive to your
request and no records responsive to your request were found.

---

[1] 5 U.S.C. § 552a(d)(1).
[2] 5 U.S.C. §§ 552a(d)(5), (j), and (k).

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S.C. § 552(c) (2006 & Supp. IV (2010).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist

If you are not satisfied with the response to this request, you have the right to appeal following the procedures outlined in the DHS regulations at 6 C.F.R. § 5.9.  Should you wish to do so, you must send your appeal and a copy of this letter, within 90 days of the date of this letter, to:

> U.S. Immigration and Customs Enforcement
> Office of the Principal Legal Advisor
> U.S. Department of Homeland Security
> 500 12th Street, S.W., Mail Stop 5900
> Washington, D.C. 20536-5900

Your envelope and letter should be marked "FOIA Appeal."  Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

Provisions of the FOIA and Privacy Act allow us to recover part of the cost of complying with your request.  In this instance, because the cost is below the $14 minimum, there is no charge.[3]

If you need any further assistance or would like to discuss any aspect of your request, please contact the FOIA office and refer to FOIA case number **2017-ICFO-28863**. You may send an e-mail to ice-foia@ice.dhs.gov, call toll free (866) 633-1182, or you may contact our FOIA Public Liaison, Fernando Pineiro, in the same manner. Additionally, you have a right to right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974.  You may contact OGIS as follows:  Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

> Sincerely,
>
> Catrina M. Pavlik-Keenan
> FOIA Officer

for

---

[3] 6 CFR § 5.11(d)(4).

| | |
|---|---|
| **From:** | Vera Eidelman |
| **To:** | "ice-foia@ice.dhs.gov" |
| **Cc:** | Nathan Wessler |
| **Subject:** | Seeking Clarification Regarding FOIA Case No. 2017-ICFO-28863 |
| **Date:** | Wednesday, September 20, 2017 2:55:42 PM |
| **Attachments:** | ICE Response to Requester (No Records).pdf |
| | ICE-CBP Stingray FOIA signed.pdf |

Dear Ms. Pavlik-Keenan,

I am writing on behalf of the ACLU with regard to FOIA Case No. 2017-ICFO-28863. That case refers to a FOIA request the ACLU submitted on May 19, which seeks ten categories of records related to cell site simulators. I am attaching the request here for your reference; the ten categories are described on pages 3–5.

Today, we received ICE's "final response" to the request, also attached, which describes our FOIA request as seeking only the first category of information listed in the request. ICE's response appears to ignore the nine other specific requests (including, for example, records concerning the purchase of cell site simulator equipment). Can you please clarify whether the final response is meant to respond to the full FOIA request, or if it only concerns the first category of information listed in our request? If the latter, when can we expect a response regarding the nine other categories?

I look forward to hearing from you, and I am happy to discuss this by phone, if easier. We attempted to call you twice today at the line you provided in the final response, but the recording that answered described the line as an "unmonitored line," and the voicemail box it eventually led to was full. If there is a better number to use, please let me know.

Thank you.

Vera


Vera Eidelman

Brennan Fellow | Speech, Privacy & Technology Project

American Civil Liberties Union

125 Broad St., 18th Floor, New York, NY 10004

(212) 549-2556

veidelman@aclu.org

PGP fingerprint: 94D42DB66BE669A0876E18F6BD78D419AE72B204



**U.S. Department of Homeland Security**
500 12th St. SW; STOP 5009
Washington, D.C. 20536-5009

October 18, 2017

Vera Eidelman
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004-2400

**RE: 2017-ICAP-00573, 2017-ICFO-28863**

Dear Mrs. Eidelman:

This is in response to your correspondence dated September 20, 2017, received September 25, 2017, appealing the response to your Freedom of Information Act (FOIA) request, dated May 19, 2017, filed with U.S. Immigration and Customs Enforcement (ICE).  Your request sought records pertaining to cell site simulators.

By letter, dated September 20, 2017, the ICE FOIA Office advised that "ICE has conducted a search of the ICE Office of Enforcement and Removal Operations (ERO), the ICE Office of Homeland Security Investigations (HSI), the ICE Office of Acquisitions (OAQ), and the ICE Office of Congressional Relations (OCR) for records responsive to your request and no records responsive to your request were found."  You have appealed the adequacy of the search.

Upon a complete review of the administrative record, ICE has determined that new search(s) or, modifications to the existing search(s), could be made.  Therefore, ICE is remanding your request to the ICE FOIA Office for processing and re-tasking to the appropriate agency/office(s) to obtain any responsive documents.  The ICE FOIA Office will respond directly to you.

Should you have any questions regarding this appeal remand, please contact ICE at ice-foia@dhs.gov.  In the subject line of the email, please include the word "appeal," your appeal number, which is **2017-ICAP-00573,** and the FOIA case number, which is **2017-ICFO-28863**.

Sincerely,

Erin J. Clifford
Chief
Government Information Law Division
ICE Office of the Principal Legal Advisor
U.S. Department of Homeland Security