# EXHIBIT C

| | |
|---|---|
| **From:** | CBPFOIA@cbp.dhs.gov |
| **To:** | Nathan Wessler |
| **Subject:** | FOIA Expedited Processing Disposition Reached for CBP-2017-058684 |
| **Date:** | Wednesday, May 24, 2017 12:36:41 PM |

Your request for Expedited Processing for the FOIA request CBP-2017-058684 has been denied. Additional details for this request are as follows:

- Request Created on: 05/19/2017
- Expedited Disposition Reason: Did not meet DHS criteria.
- Request Long Description: The American Civil Liberties Union and the American Civil Liberties Union Foundation request records pertaining to use of cell site simulators by Immigration and Customs Enforcement and Customs and Border Protection.

| | |
|---|---|
| **From:** | CBPFOIA@cbp.dhs.gov |
| **To:** | Nathan Wessler |
| **Subject:** | Final Disposition, Request CBP-2017-058684 |
| **Date:** | Wednesday, May 24, 2017 12:54:25 PM |
| **Attachments:** | CBP-2017-058684 Final Response Letter.pdf |

This is a final response to your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP).

We conducted a comprehensive search of files within the CBP databases for records that would be responsive to your request. Unfortunately, we were unable to locate or identify any responsive records, based upon the information you provided in your request.

This completes the CBP response to your request. You may contact a FOIA Public Liaison by sending an email via your FOIAonline account, or call 202-325-0150. Please notate file number CBP-2017-058684 on any future correspondence to CBP related to this request.

If you are not satisfied with the response to this request, you have a right to appeal the final disposition. Should you wish to do so, you must file your appeal within 90 days of the date of this letter following the procedures outlined in the DHS regulations at Title 6 C.F.R. §5.9. Please include as much information as possible to help us understand the grounds for your appeal. You should submit your appeal via FOIAonline by clicking on the "Create Appeal" button that appears when you view your initial request. If you do not have computer access, you may send your appeal and a copy of this letter to: FOIA Appeals, Policy and Litigation Branch, U.S. Customs and Border Protection, 90 K Street, NE, 10th Floor, Washington, DC 20229-1177. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia. Additional information can be found at the following link https://www.cbp.gov/document/guidance/exemption-definitions.

Additionally, you have a right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Given the nature of this request, some records are only being released to you as the requester. If you have an account in FOIAonline, you may access those records by logging into FOIAonline. Otherwise, those responsive records will be sent via the method agreed upon with the FOIA processor.

1300 Pennsylvania Avenue NW
Washington, DC 20229



CBP-2017-058684

May 24, 2017

Nathan Wessler
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004

Dear Mr. Wessler:

This is a final response to your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP) records pertaining to use of cell site simulators by Customs and Border Protection.

We conducted a comprehensive search of files within the CBP databases for records that would be responsive to your request.  Unfortunately, we were unable to locate or identify any responsive records, based upon the information you provided in your request.

This completes the CBP response to your request.  You may contact a FOIA Public Liaison by sending an email via your FOIAonline account, or call 202-325-0150.  Please notate file number CBP-2017-058684 on any future correspondence to CBP related to this request.

If you are not satisfied with the response to this request, you have a right to appeal the final disposition.  Should you wish to do so, you must file your appeal within 90 days of the date of this letter following the procedures outlined in the DHS regulations at Title 6 C.F.R. §5.9.  Please include as much information as possible to help us understand the grounds for your appeal. You should submit your appeal via FOIAonline by clicking on the "Create Appeal" button that appears when you view your initial request.   If you do not have computer access, you may send your appeal and a copy of this letter to:  FOIA Appeals, Policy and Litigation Branch, U.S. Customs and Border Protection, 90 K Street, NE, 10th Floor, Washington, DC 20229-1177.  Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.  Additional information can be found at the following link https://www.cbp.gov/document/guidance/exemption-definitions.

Additionally, you have a right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974.  You may contact OGIS as

follows:  Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Jasmine Wiggins
FOIA Analyst, FOIA Division
Privacy and Diversity Office

**From:** CBPFOIA@cbp.dhs.gov
**To:** Nathan Wessler
**Subject:** FOIA Fee Waiver Disposition Reached for CBP-2017-058684
**Date:** Wednesday, May 24, 2017 12:34:58 PM

Your request for Fee Waiver for the FOIA request CBP-2017-058684 has been determined to be not applicable as the request is not billable. Additional details for this request are as follows:

- Request Created on: 05/19/2017
- Fee Waiver Disposition Reason: N/A
- Request Long Description: The American Civil Liberties Union and the American Civil Liberties Union Foundation request records pertaining to use of cell site simulators by Immigration and Customs Enforcement and Customs and Border Protection.

**LEGAL DEPARTMENT**

## ACLU
AMERICAN CIVIL LIBERTIES UNION

June 19, 2017

FOIA Appeals
Policy and Litigation Branch
U.S. Customs and Border Protection
90 K Street, NE, 10th Floor
Washington, DC 20229-1177

**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
WWW.ACLU.ORG

**OFFICERS AND DIRECTORS**
SUSAN N. HERMAN
*PRESIDENT*

ANTHONY D. ROMERO
*EXECUTIVE DIRECTOR*

ROBERT B. REMAR
*TREASURER*

Re:     **Freedom of Information Act Appeal
          FOIA Request # CBP-2017-058684**

To Whom It May Concern:

    The American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU") write to appeal Customs and Border Protection's ("CBP") final response to Freedom of Information Act ("FOIA") Request No. 2017-058684 (the "Request," attached as Exhibit A). The Request, dated May 19, 2017, seeks copies of records pertaining to the use of cell site simulators by Immigration and Customs Enforcement ("ICE") and CBP.

    By letter dated May 24, 2017 (the "Response," attached as Exhibit B), CBP denied the ACLU's request for records pertaining to CBP's use of cell site simulators because the agency was "unable to locate or identify any responsive records" despite having "conducted a comprehensive search of files within the CBP databases." This final response violates FOIA by failing to provide records responsive to the Request and by indicating that CBP failed to perform an adequate search of its records. The ACLU hereby appeals this decision.

    "An inadequate search for records constitutes an improper withholding under the FOIA." *Dean v. U.S. Dep't of Justice*, 141 F. Supp. 3d 46, 48 (D.D.C. 2015). "An agency's search is adequate if its methods are reasonably calculated to locate records responsive to a FOIA request." *Hodge v. FBI*, 764 F. Supp. 2d 134, 141 (D.D.C. 2011); *see also* 6 C.F.R. § 5.3(b) (explaining that FOIA requires agencies to "locate [records requested] with a reasonable amount of effort."). By failing to disclose responsive records within the applicable timeframe and failing to provide a plausible justification for nondisclosure, the CBP has violated 5 U.S.C. § 552(a)(6)(A). To the extent that this failure is attributable to the adequacy of the CBP's search for responsive records, the CBP violated 5 U.S.C. § 552(a)(3)(C), (D).

    First, it is not plausible that a "comprehensive" search by CBP would fail to return responsive records. A December 2016 report from the House

Committee on Oversight and Government Reform discloses that CBP possesses at least 33 cell site simulator devices.[1] At a minimum, CBP necessarily has records regarding the purchase of this equipment, which would be responsive to item 9 of the Request. *See* Request at 4. Moreover, it is not plausible that CBP has never used its nearly three dozen cell site simulators, meaning that the agency would also have records responsive to the portions of the request covering deployment and use of the technology. *See id.* at 3-4. It is simply not credible that CBP possesses more than 30 cell site simulators but has zero records regarding their purchase and use. An adequate search would have returned records responsive to the Request. CBP has failed to conduct a search "reasonably calculated to locate" responsive records. *Hodge*, 764 F. Supp. 2d at 141.

Second, CBP's Response lacks any explanation concerning the reason why the agency found no responsive records. CBP merely asserted that it conducted a "comprehensive search" of its database, but did not specify what agency components or records repositories and databases were searched, nor the search terms or methods used to seek responsive records. Because an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested," *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), the agency "at a minimum ha[s] to aver that it has searched all files likely to contain relevant documents." *AIC v. DHS*, 950 F. Supp. 2d 221, 230 (D.D.C. 2013). Moreover, CBP sent its Response a mere three business days after the Request was submitted. This raises concerns about the thoroughness of the search. A reasonable search for records responsive to the Request would include searches of, at a minimum: records concerning purchase and acquisition of cell site simulators held by the Office of Acquisition and the Office of Information & Technology; records regarding policies governing and actual practices of use and deployment of cell site simulators held by the Office of Field Operations, the Border Patrol, the various components of the Operations Support Office, and other agency components; policy documents and other responsive records held by the Privacy and Diversity Office; and records held by the Office of the Chief Counsel.[2]

CBP's decision to deny the ACLU's request for records pertaining to the agency's use of cell site simulators was in error. It is not plausible that CBP conducted a "comprehensive search of files" for responsive records. *See*

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[1] House Comm. On Oversight & Gov't Reform, *Law Enforcement Use of Cell-Site Simulation Technologies: Privacy Concerns & Recommendations* 14 (Dec. 19, 2016), https://oversight.house.gov/wp-content/uploads/2016/12/THE-FINAL-bipartisan-cell-site-simulator-report.pdf.

[2] This list is illustrative only, and is not intended to represent a comprehensive list of components that should be searched. The agency must make an initial determination of which components are likely to possess responsive records.

Response. The agency should therefore conduct a new search and promptly process records responsive to the Request.

Thank you for your attention to this matter. Please furnish all further correspondence to:

> Nathan Freed Wessler
> American Civil Liberties Union
> 125 Broad Street—18th Floor
> New York, New York 10004
> T: 212.549.3500
> F: 212.549.2654
> nwessler@aclu.org

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Respectfully,

Nathan Freed Wessler
American Civil Liberties Union
Foundation
125 Broad Street—18th Floor
New York, New York 10004
T: 212.549.2500
F: 212.549.2654
nwessler@aclu.org

# EXHIBIT A



**LEGAL
DEPARTMENT**

May 19, 2017

U.S. Customs and Border Protection
Freedom of Information Act Officer
1300 Pennsylvania Avenue, NW Room 3.3D
Washington, D.C. 20229
Phone: 202-344-1610

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, D.C. 20536-5009
Fax: 202-732-4266
Email: ICE-FOIA@dhs.gov

**Re:    Request Under Freedom of Information Act
        (Expedited Processing & Fee Waiver/Limitation Requested)**

To Whom It May Concern:

The American Civil Liberties Union and the American Civil Liberties
Union Foundation (together, the "ACLU")[1] submit this Freedom of Information
Act ("FOIA") request (the "Request") for records pertaining to use of cell site
simulators by Immigration and Customs Enforcement ("ICE") and Customs and
Border Protection ("CBP").

## I. Background

On May 18, 2017, the Detroit News reported on a case where
Immigration and Customs Enforcement agents, working with the FBI Violent
Gangs Task Force, obtained a search warrant authorizing use of a cell site
simulator to locate an undocumented immigrant suspected of "Unlawful Re-

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

NATIONAL OFFICE
125 BROAD STREET, 18TH
FL.
NEW YORK, NY 10004-2400
T/212.549.2500
WWW.ACLU.ORG

OFFICERS AND
DIRECTORS
SUSAN N. HERMAN
*PRESIDENT*

ANTHONY D. ROMERO
*EXECUTIVE DIRECTOR*

ROBERT B. REMAR
*TREASURER*

---

[1] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization
that provides legal representation free of charge to individuals and organizations in civil rights
and civil liberties cases, educates the public about civil rights and civil liberties issues across the
country, directly lobbies legislators, and mobilizes the American Civil Liberties Union's
members to lobby their legislators. The American Civil Liberties Union is a separate non-profit,
26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties
implications of pending and proposed state and federal legislation, provides analysis of pending
and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their
legislators.

entry after Deportation."[2] Although it has been publicly known for several years that ICE has purchased cell site simulator technology,[3] this is the first time the ACLU has seen evidence of use of the technology in a particular ICE investigation or operation.

Cell site simulators, also called IMSI catchers (in reference to the unique identifier—or international mobile subscriber identity—of wireless devices), impersonate a wireless service provider's cell tower, prompting cell phones and other wireless devices to communicate with them. These devices are often called "Stingrays," after a leading model produced by the Florida-based Harris Corporation.[4] Cell site simulators are commonly used in two ways: to collect unique numeric identifiers associated with phones in a given location, or to ascertain the location of a phone when the officers know the numbers associated with it but don't know precisely where it is. Both of these uses raise privacy concerns. Collecting unique identifiers of all phones in a particular location inherently collects location data on many innocent people. And using a cell site simulator to ascertain the location of a specific cell phone can reveal that it is in a constitutionally protected place, such as a home, that has traditionally been immune from search unless law enforcement agents obtain a warrant based on probable cause. Moreover, even when law enforcement is using a cell site simulator to locate a specific suspect, the device also sweeps up information about bystanders' phones.

Despite the Department of Homeland Security's issuance in 2015 of a policy directive governing use of cell site simulators by DHS components in furtherance of criminal investigations,[5] and ICE's 2012 release of records

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

[2] Robert Snell, *Feds Use Anti-Terror Tool to Hunt the Undocumented*, Detroit News, May 18, 2017, http://www.detroitnews.com/story/news/local/detroit-city/2017/05/18/cell-snooping-fbi-immigrant/101859616/.

[3] *See* Letter from Catrina M. Pavlik-Keenan, FOIA Officer, U.S. Immigration and Customs Enforcement, to Christopher Soghoian, Center for Applied Cybersecurity Research, Indiana University, Re: ICE FOIA Case Number 2012FOIA5235 (Sept. 19, 2012), *available at* https://www.documentcloud.org/documents/479397-stingrayfoia.html.

[4] Other models of cell site simulators marketed by Harris Corp. include the "Triggerfish," "Kingfish," and "Hailstorm." *See* Ryan Gallagher, *Meet the Machines that Steal Your Phone's Data*, Ars Technica (Sept. 25, 2013), http://arstechnica.com/tech-policy/2013/09/meet-the-machines-that-steal-your-phones-data/. Similar devices, often called "DRT boxes" or "dirtboxes" are marketed by Digital Receiver Technology (DRT). *See* Devlin Barrett, *Americans' Cellphones Targeted in Secret U.S. Spy Program*, Wall St. J. (Nov. 13, 2014), http://online.wsj.com/articles/americans-cellphones-targeted-in-secret-u-s-spy-program-1415917533.

[5] Department of Homeland Security, Policy Directive 047-02, Department Policy Regarding the Use of Cell-Site Simulator Technology (Oct. 19, 2015), https://www.dhs.gov/sites/default/files/publications/Department%20Policy%20Regarding%20the%20Use%20of%20Cell-Site%20Simulator%20Technology.pdf.

concerning purchase of cell site simulator technology,[6] little is publicly known about use of cell site simulators in ICE and CBP operations.

To provide the American public with information about use of invasive cell site simulator devices within the United States by ICE and CBP, the ACLU seeks such information through this FOIA request.

## II. Requested Records

The ACLU seeks the release of the following records (including reports, memoranda, guidance documents, instructions, training documents, formal and informal presentations, directives, contracts or agreements, memoranda of understanding, and written or electronic communications):

(1)     Any policy directives, guidance documents, memoranda, training materials, or similar records created on or after October 19, 2015, governing or concerning use of cell site simulators by Immigrations and Customs Enforcement and Customs and Border Protection agents, employees, or partners, including any policy or guidance document that cites Department of Homeland Security Policy Directive 047-02 ("Department Policy Regarding Use of Cell-Site Simulator Technology"),[7] as well as any communications with Congress concerning implementation of or updates to DHS Policy Directive 047-02 and other policies governing cell site simulator use;

(2)     Any records reflecting whether ICE or CBP does use or is permitted to use cell site simulators in furtherance of civil immigration enforcement operations, as opposed to in furtherance of criminal investigations, and any guidance concerning whether and how DHS Policy Directive 047-02 applies to uses of cell site simulators in furtherance of immigration-related investigations that are not criminal in nature;

(3)     From October 19, 2015 to the present, annual records reflecting the total number of times a cell-site simulator is deployed in the jurisdiction of each field office, the numbers of deployments at the request of other agencies, and the number of times the technology is deployed in emergency circumstances (collection of this information is required by DHS Policy Directive 047-02);

(4)     Since the date of the last annual record described in item 3, above, records reflecting the number of ICE and CBP investigations or

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

[6] ICE FOIA Case Number 2012FOIA5235, *available at* https://www.documentcloud.org/documents/479397-stingrayfoia.html.

[7] Department of Homeland Security, Policy Directive 047-02, Department Policy Regarding the Use of Cell-Site Simulator Technology (Oct. 19, 2015), https://www.dhs.gov/sites/default/files/publications/Department%20Policy%20Regarding%20the%20Use%20of%20Cell-Site%20Simulator%20Technology.pdf.

3

operations in which cell site simulators have been deployed, including information about the field office deploying the cell site simulator and whether those deployments were in support of criminal investigations of non-immigration-related offenses, criminal investigations of immigration-related offenses, or civil immigration enforcement operations;

(5)     Records reflecting the number of times ICE and CBP have requested the assistance of other law enforcement agencies (including federal, state, local, and foreign) in deploying cell site simulators;

(6)     Records regarding implementation of an auditing program to ensure deletion of data collected by cell site simulators, as required by DHS Policy Directive 047-02;

(7)     All applications submitted to state and federal courts since January 1, 2013, for orders or search warrants authorizing the use of cell site simulators in ICE and CBP investigations or operations (including investigations or operations as part of task forces or partnerships with other agencies), as well as any warrants or orders, denials of warrants or orders, and returns of warrants associated with those applications. If any responsive records are sealed, please provide the date, court, and docket number for each sealed document;

(8)     All requests to persons or offices within the Department of Homeland Security for supervisory or legal authorization to deploy cell site simulators;

(9)     Records dated or created on or after January 1, 2013 concerning the purchase of cell site simulator equipment and related software and hardware, including purchase orders, invoices, documentation of selection, sole source or limited source justification and approval documentation, communications, and other memoranda and documentation. This should include any purchase of cell site simulator equipment from the Harris Corporation (including, but not limited to, Stingray, Stingray II, Hailstorm, Triggerfish, Kingfish, Amberjack, and Harpoon devices), DRT (also known as Digital Receiver Technology), and other companies. At a minimum, please search the ICE Office of Acquisition Management for these record; and

(10)     Records concerning the use of evidence derived or resulting from use of a cell site simulator in immigration court proceedings, and the provision of notice to respondents in immigration court proceedings informing them that a cell site simulator was used.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive electronic records be provided electronically in their native file format, if possible.  Alternatively, the ACLU requests that the

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

records be provided electronically in a text-searchable, static-image format
(PDF), in the best image quality in the agency's possession, and that the records
be provided in separate, Bates-stamped files.

### III. Application for Expedited Processing

The ACLU requests expedited processing pursuant to 5 U.S.C.
§ 552(a)(6)(E).[8]  There is a "compelling need" for these records, as defined in
the statute, because the information requested is "urgen[tly]" needed by an
organization primarily engaged in disseminating information "to inform the
public concerning actual or alleged Federal Government activity."  5
U.S.C. § 552(a)(6)(E)(v)(II).

A.    *The ACLU is an organization primarily engaged in disseminating
information in order to inform the public about actual or alleged
government activity.*

The ACLU is "primarily engaged in disseminating information" within
the meaning of the statute.  5 U.S.C. § 552(a)(6)(E)(v)(II).[9]  Obtaining
information about government activity, analyzing that information, and widely
publishing and disseminating that information to the press and public are critical
and substantial components of the ACLU's work and are among its primary
activities.  *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding
non-profit public interest group that "gathers information of potential interest to
a segment of the public, uses its editorial skills to turn the raw material into a
distinct work, and distributes that work to an audience" to be "primarily engaged
in disseminating information").[10]

The ACLU regularly publishes *STAND*, a print magazine that reports on
and analyzes civil liberties-related current events.  The magazine is disseminated
to over 620,000 people.  The ACLU also publishes regular updates and alerts via
email to over 2.6 million subscribers (both ACLU members and non-members).
These updates are additionally broadcast to over 3.2 million social media
followers.  The magazine as well as the email and social-media alerts often
include descriptions and analysis of information obtained through FOIA
requests.

The ACLU also regularly issues press releases to call attention to

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

[8] *See also* 6 C.F.R. 5.5(e).

[9] *See also* 6 C.F.R. 5.5(e)(1)(ii).

[10] Courts have found that the ACLU as well as other organizations with similar missions
that engage in information-dissemination activities similar to the ACLU are "primarily engaged
in disseminating information."  *See, e.g., Leadership Conference on Civil Rights v. Gonzales*,
404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info.
Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

documents obtained through FOIA requests, as well as other breaking news,[11] and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[12]

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests.  This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[13]  The ACLU also

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

[11] *See, e.g.*, Press Release, American Civil Liberties Union, U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit; Press Release, American Civil Liberties Union, Secret Documents Describe Graphic Abuse and Admit Mistakes (June 14, 2016), https://www.aclu.org/news/cia-releases-dozens-torture-documents-response-aclu-lawsuit; Press Release, American Civil Liberties Union, U.S. Releases Targeted Killing Memo in Response to Long-Running ACLU Lawsuit (June 23, 2014), https://www.aclu.org/national-security/us-releases-targeted-killing-memo-response-long-running-aclu-lawsuit; Press Release, American Civil Liberties Union, Justice Department White Paper Details Rationale for Targeted Killing of Americans (Feb. 4, 2013), https://www.aclu.org/national-security/justice-department-white-paper-details-rationale-targeted-killing-americans; Press Release, American Civil Liberties Union, Documents Show FBI Monitored Bay Area Occupy Movement (Sept. 14, 2012), https://www.aclu.org/news/documents-show-fbi-monitored-bay-area-occupy-movement-insidebayareacom.

[12] *See, e.g.*, Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept, Feb. 8, 2017, https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program/ (quoting ACLU attorney Hugh Handeyside);  Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes,* Wash. Post, Aug. 6, 2016, http://wapo.st/2jy62cW (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program,* ABC, June 15, 2016, http://abcn.ws/2jy40d3 (quoting ACLU staff attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian, Mar. 17, 2016, https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU attorney Nate Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret,* NPR, Dec. 9, 2015, http://n.pr/2jy2p71 (quoting ACLU project director Hina Shamsi).

[13] *See, e.g.*, Hugh Handeyside, *New Documents Show This TSA Program Blamed for Profiling Is Unscientific and Unreliable — But Still It Continues* (Feb. 8, 2017, 11:45 AM), https://www.aclu.org/blog/speak-freely/new-documents-show-tsa-program-blamed-profiling-unscientific-and-unreliable-still; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site* (Nov. 22, 2016, 3:15 PM), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, *Details Abound in Drone 'Playbook' — Except for the Ones That Really Matter Most* (Aug. 8, 2016, 5:30 PM), https://www.aclu.org/blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most;  Nathan Freed Wessler, *ACLU- Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida* (Feb. 22, 2015, 5:30 PM), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order 12333* (Oct. 30, 2014, 3:29 PM),

regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog.  The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features.  *See* https://www.aclu.org/multimedia.  The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments, and an archive of case-related documents.  Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant Congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.

The ACLU website includes many features on information obtained through the FOIA.[14]  For example, the ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333; ACLU, *ACLU Eye on the FBI: Documents Reveal Lack of Privacy Safeguards and Guidance in Government's "Suspicious Activity Report" Systems* (Oct. 29, 2013), https://www.aclu.org/sites/default/files/assets/eye_on_fbi_-_sars.pdf.

[14] *See, e.g.*, Nathan Freed Wessler & Dyan Cortez, *FBI Releases Details of 'Zero-Day' Exploit Decisionmaking Process* (June 26, 2015, 11:00 AM), https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; *ACLU v. DOJ – FOIA Case for Records Relating to the Killing of Three U.S. Citizens*, ACLU Case Page, https://www.aclu.org/national-security/anwar-al-awlaki-foia-request; *ACLU v. Department of Defense*, ACLU Case Page, https://www.aclu.org/cases/aclu-v-department-defense; *Mapping the FBI: Uncovering Abusive Surveillance and Racial Profiling*, ACLU Case Page, https://www.aclu.org/mappingthefbi; *Bagram FOIA*, ACLU Case Page https://www.aclu.org/cases/bagram-foia; *CSRT FOIA*, ACLU Case Page, https://www.aclu.org/national-security/csrt-foia; *ACLU v. DOJ – Lawsuit to Enforce NSA Warrantless Surveillance FOIA Request*, ACLU Case Page, https://www.aclu.org/aclu-v-doj-lawsuit-enforce-nsa-warrantless-surveillance-foia-request; *Patriot FOIA*, ACLU Case Page, https://www.aclu.org/patriot-foia; *NSL Documents Released by DOD*, ACLU Case Page, https://www.aclu.org/nsl-documents-released-dod?redirect=cpredirect/32088.

litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves.  Similarly, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[15]

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA.  For example, through compilation and analysis of information gathered from various sources—including information obtained from the government through FOIA requests—the ACLU created an original chart that provides the public and news media with a comprehensive summary index of Bush-era Office of Legal Counsel memos relating to interrogation, detention, rendition, and surveillance.[16]  Similarly, the ACLU produced an analysis of documents released in response to a FOIA request about the TSA's behavior detection program[17]; a summary of documents released in response to a FOIA request related to the FISA Amendments Act[18]; a chart of original statistics about the Defense Department's use of National Security Letters based on its own analysis of records obtained through FOIA requests[19]; and an analysis of documents obtained through FOIA requests about FBI surveillance flights over Baltimore.[20]

The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request.  The records requested are not sought for commercial use and the requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

[15] *The Torture Database*, ACLU, https://www.thetorturedatabase.org; *see also Countering Violent Extremism FOIA Database*, ACLU, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database*, ACLU, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; *Targeted Killing FOIA Database*, ACLU, https://www.aclu.org/foia-collection/targeted-killing-foia-database.

[16] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/safefree/ olcmemos_2009_0305.pdf.

[17] *Bad Trip: Debunking the TSA's 'Behavior Detection' Program*, ACLU (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_report-v02.pdf.

[18] *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU, https://www.aclu.org/files/pdfs/natsec/faafoia20101129/20101129Summary.pdf.

[19] *Statistics on NSL's Produced by Department of Defense*, ACLU, https://www.aclu.org/other/statistics-nsls-produced-dod.

[20] Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights.

B. *The records sought are urgently needed to inform the public about actual or alleged government activity.*

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).[21]  Specifically, the requested records relate to use of cell site simulators by ICE and CBP.  Law enforcement use of cell site simulators is the subject of widespread public controversy and media attention, as reflected in a steady torrent of news coverage in national and local outlets.[22]  Also of deep public concern are questions surrounding ICE and CBP operations targeting undocumented immigrants, including whether there are appropriate limits on agents' discretion, whether particularly vulnerable populations are being protected from unjustified targeting, , and whether agents are using acceptable means to locate and detain people.[23]  Amid reports of a spike in arrests of undocumented immigrants by

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

[21] *See also* 6 C.F.R. 5.5(e)(1)(ii).

[22] *See, e.g.*, *See, e.g.*, Tom Jackman, *D.C. Appeals Court Poised to Rule on Whether Police Need Warrants for Cellphone Tracking*, Wash. Post, Apr. 18, 2017, https://www.washingtonpost.com/news/true-crime/wp/2017/04/18/d-c-appeals-court-poised-to-rule-on-whether-police-need-warrants-for-cellphone-tracking/; Erin Kelly, *Bipartisan Bill Seeks Warrants for Police Use of 'Stingray' Cell Trackers*, USA Today, Feb. 15, 2017, https://www.usatoday.com/story/news/politics/onpolitics/2017/02/15/bipartisan-bill-seeks-warrants-police-use-stingray-cell-trackers/97954214/; Brad Heath, *U.S. Marshals Secretly Tracked 6,000 Cellphones*, USA Today, Feb. 23, 2016, https://www.usatoday.com/story/news/2016/02/23/us-marshals-service-cellphone-stingray/80785616/; Joseph Goldstein, *New York Police Dept. Has Used Cellphone Tracking Devices Since  2008, Civil Liberties Group Says*, N.Y. Times, Feb. 11, 2016, https://www.nytimes.com/2016/02/12/nyregion/new-york-police-dept-cellphone-tracking-stingrays.html; Joel Kurth, *Michigan State Police Using Cell Snooping Devices*, Detroit News, Oct. 23, 2015, http://www.detroitnews.com/story/news/local/michigan/2015/10/22/stingray/74438668/; Glenn E. Rice, *Secret Cellphone Tracking Device Used by Police Stings Civil Libertarians*, Kan. City Star, Sept. 5, 2015, http://www.kansascity.com/news/business/technology/article34185690.html; Justin Fenton, *Baltimore Police Used Secret Technology to Track Cellphones in Thousands  of Cases*, Baltimore Sun, Apr. 9, 2015, http://www.baltimoresun.com/news/maryland/baltimore-city/bs-md-ci-stingray-case-20150408-story.html; Fred Clasen-Kelly, *CMPD's Cellphone Tracking  Cracked High-Profile Cases*, Charlotte  Observer, Nov. 22, 2014, http://www.charlotteobserver.com/news/local/crime/article9235652.html; Devlin Barrett, *Americans' Cellphones Targeted in Secret U.S. Spy Program*, Wall St. J., Nov. 13, 2014, http://online.wsj.com/articles/americans-cellphones-targeted-in-secret-u-s-spy-program-1415917533; Jason Leopold, *Police in Washington, DC Are Using the Secretive 'Stingray' Cell Phone Tracking Tool*, Vice News, Oct. 17, 2014, https://news.vice.com/article/police-in-washington-dc-are-using-the-secretive-stingray-cell-phone-tracking-tool; Joel Kurth & Lauren Abdel-Razzaq, *Secret Military Device Lets Oakland Deputies Track Cellphones*, Detroit News, Apr. 4, 2014, http://www.detroitnews.com/article/20140404/SPECIAL/304040043/Secret-military-device-lets-Oakland-deputies-track-cellphones; Michael Bott & Thom Jensen, *9 Calif. Law Enforcement Agencies Connected to Cellphone Spying Technology*, ABC News 10, Mar. 6, 2014, http://www.news10.net/story/news/investigations/watchdog/2014/03/06/5-california-law-enforcement-agencies-connected-to-stingrays/6147381/.

[23] *See, e.g.*, *U.S.: Immigrant Arrests Soar Under Trump, Fewer Deported*, Assoc. Press, May 17, 2017, https://www.nytimes.com/aponline/2017/05/17/us/ap-us-trump-immigration-

ICE and CBP under the current administration, there is a pressing need for accurate information about the means used by ICE and CBP to identify and locate immigrants whom the agencies seek to detain and potentially deport. The records sought relate to a matter of widespread and exceptional media interest: use of cell site simulators by federal immigration authorities in immigration enforcement operations. Indeed, within hours of the Detroit News' initial report about the unsealed warrant in Michigan, a number of other news outlets had picked up the story.[24]

Given the foregoing, the ACLU has satisfied the requirements for expedited processing of this Request.

### IV. Application for Waiver or Limitation of Fees

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).[25] The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

A.   *The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU.*

As discussed above, credible media and other investigative accounts underscore the substantial public interest in the records sought through this Request. Given the ongoing and widespread media attention to this issue, the records sought will significantly contribute to public understanding of an issue

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

enforcement.html?_r=0; Alan Gomez, *Immigration Arrests Up 38% Nationwide Under Trump*, USA Today, May 17, 2017, https://www.usatoday.com/story/news/world/2017/05/17/deportations-under-president-trump-undocumented-immigrants/101786264/.

[24] *See, e.g.*, Russel Brandom, *Feds are Using Stingray Cell-Trackers to Find Undocumented Immigrants*, The Verge, May 19, 2017, https://www.theverge.com/2017/5/19/15662968/immigration-ice-stingray-cell-site-simulator-deportation-arrest; Matthew Rozsa, *An Anti-Terrorism Device is Being Used to Find Undocumented Immigrants Through Their Cell Phones*, Salon, May 19, 2017, https://www.salon.com/2017/05/19/an-anti-terrorism-device-is-being-used-to-find-undocumented-immigrants-through-their-cell-phones/; Jeva Lange, *Federal Agents Have Started Using a Counter-Terrorism Device to Catch Undocumented Immigrants*, The Week, May 19, 2017, https://theweek.com/speedreads/700192/federal-agents-have-started-using-counterterrorism-device-catch-undocumented-immigrants.

[25] *See also* 6 C.F.R. 5.11(k)(1)(i)-(ii).

of profound public importance.  Because little specific information about use of cell site simulators by ICE and CBP is publicly available, the records sought are certain to contribute significantly to the public's understanding of this topic.

The ACLU is not filing this Request to further its commercial interest. As described above, any information disclosed by the ACLU as a result of this FOIA Request will be available to the public at no cost.  Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

B.     *The ACLU is a representative of the news media and the records are not sought for commercial use.*

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use.  5 U.S.C. § 552(a)(4)(A)(ii)(II).[26]  The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."  5 U.S.C. § 552(a)(4)(A)(ii)(III)[27]; *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. DOJ*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information").  The ACLU is therefore a "representative of the news media" for the same reasons it is "primarily engaged in the dissemination of information."

---

[26] *See also* 6 C.F.R. 5.11(k)(2)(iii).

[27] *See also* 6 C.F.R. 5.11(b)(6).

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media" as well.  *See, e.g.*, *Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[28]

On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[29]  As was true in those instances, the ACLU meets the requirements for a fee waiver here.

*       *       *

Pursuant to applicable statutes and regulations, the ACLU expects a determination regarding expedited processing within 10 days.  *See* 5 U.S.C. § 552(a)(6)(E)(ii); 6 C.F.R. 5.5(e)(4).

If the Request is denied in whole or in part, the ACLU asks that you justify all deletions by reference to specific exemptions to FOIA.  The ACLU expects the release of all segregable portions of otherwise exempt material.  The ACLU reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

---

[28] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information / public education activities.  *See, e.g.*, *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; s*ee also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53–54.

[29] In May 2017, CBP granted a fee-waiver request regarding a FOIA request for documents related to electronic device searches at the border.  In May 2016, the FBI granted a fee-waiver request regarding a FOIA request issued to the DOJ for documents related to Countering Violent Extremism Programs.  In April 2013, the National Security Division of the DOJ granted a fee-waiver request with respect to a request for documents relating to the FISA Amendments Act. Also in April 2013, the DOJ granted a fee-waiver request regarding a FOIA request for documents related to "national security letters" issued under the Electronic Communications Privacy Act.  In August 2013, the FBI granted the fee-waiver request related to the same FOIA request issued to the DOJ.  In June 2011, the DOJ National Security Division granted a fee waiver to the ACLU with respect to a request for documents relating to the interpretation and implementation of a section of the PATRIOT Act.  In March 2009, the State Department granted a fee waiver to the ACLU with regard to a FOIA request for documents relating to the detention, interrogation, treatment, or prosecution of suspected terrorists.

Thank you for your prompt attention to this matter.  Please furnish the applicable records to:

Nathan Freed Wessler
American Civil Liberties Union
125 Broad Street—18th Floor
New York, New York 10004
T: 212.549.2500
F: 212.549.2654
nwessler@aclu.org

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

**AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION**

Respectfully,

Nathan Freed Wessler
American Civil Liberties Union
     Foundation
125 Broad Street—18th Floor
New York, New York 10004
T: 212.549.2500
F: 212.549.2654
nwessler@aclu.org

13

EXHIBIT B

1300 Pennsylvania Avenue NW
Washington, DC 20229



CBP-2017-058684

May 24, 2017

Nathan Wessler
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004

Dear Mr. Wessler:

This is a final response to your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP) records pertaining to use of cell site simulators by Customs and Border Protection.

We conducted a comprehensive search of files within the CBP databases for records that would be responsive to your request.  Unfortunately, we were unable to locate or identify any responsive records, based upon the information you provided in your request.

This completes the CBP response to your request.  You may contact a FOIA Public Liaison by sending an email via your FOIAonline account, or call 202-325-0150.  Please notate file number CBP-2017-058684 on any future correspondence to CBP related to this request.

If you are not satisfied with the response to this request, you have a right to appeal the final disposition.  Should you wish to do so, you must file your appeal within 90 days of the date of this letter following the procedures outlined in the DHS regulations at Title 6 C.F.R. §5.9.  Please include as much information as possible to help us understand the grounds for your appeal.  You should submit your appeal via FOIAonline by clicking on the "Create Appeal" button that appears when you view your initial request.   If you do not have computer access, you may send your appeal and a copy of this letter to:  FOIA Appeals, Policy and Litigation Branch, U.S. Customs and Border Protection, 90 K Street, NE, 10th Floor, Washington, DC 20229-1177.  Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.  Additional information can be found at the following link https://www.cbp.gov/document/guidance/exemption-definitions.

Additionally, you have a right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974.  You may contact OGIS as

follows:  Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Jasmine Wiggins
FOIA Analyst, FOIA Division
Privacy and Diversity Office



**U.S. Department of Homeland Security**
Washington, DC 20229

**U.S. Customs and
Border Protection**

DIS-3-RR:RDL:FAPL
CBP-AP-2017-067239 GA

July 13, 2017

Nathan Wessler
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004

RE:    Freedom of Information Act Appeal; CBP-2017-058684

Dear Mr. Wessler:

This letter is in response to your electronic submission of June 22, 2017 that appeals the response of the U.S. Customs and Border Protection ("CBP") FOIA Division to the Freedom of Information Act ("FOIA") request made by you on behalf of the American Civil Liberties Union ("ACLU").

Your FOIA Request

In your request you asked for CBP records pertaining to the use of cell site simulators by CBP.

In its response of May 24, 2017 to your FOIA request, the CBP FOIA Division stated:

We conducted a comprehensive search of files within the CBP databases for records that would be responsive to your request. Unfortunately, we were unable to locate or identify any responsive records, based upon the information you provided in your request.

Your FOIA Appeal

In your recent submission you appeal the response of the CBP FOIA Division.

Pursuant to your appeal, this office has conducted a *de novo* thorough search of CBP offices based upon the information provided. We contacted the Office of Border Patrol, Office of Air and Marine, and the Office of Intelligence and were advised that there were no records which are responsive to your request.

The decision of the CBP FOIA Division is affirmed.

The FOIA (5 U.S.C. § 552(a) (4)(B)) provides you with the opportunity to seek judicial review of this administrative appeal.  You may institute judicial review in the U.S. District Court in the district in which you reside, have a principal place of business, where the agency records are located, or in the U.S. District Court for the District of Columbia.

Alternatively, the Office of Government Information Services ("OGIS") offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  Using the OGIS does not affect your right to pursue litigation.  If you are requesting access to your own records, which is considered a Privacy Act request, you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974.  If you wish to contact the OGIS, you may do so in the following ways:  Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road, Room 2510, College Park, MD 20740-6001; by email - ogis@nara.gov; by telephone – 202-741-5770; or by facsimile – (202)741-5769.

Sincerely,

*Shari Suzuki*

Shari Suzuki, Chief
FOIA Appeals, Policy, and Litigation Branch
Regulations & Rulings
Office of Trade