**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

AMERICAN CIVIL LIBERTIES UNION,

*Plaintiff*,

v.

UNITED STATES CUSTOMS AND BORDER PROTECTION and UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,

*Defendants*.

No. 1:19-cv-11311 (JSR)

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Alexia Ramirez
Nathan Freed Wessler
Brett Max Kaufman
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
aramirez@aclu.org
nwessler@aclu.org
bkaufman@aclu.org

Robert Hodgson
Christopher Dunn
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300
rhodgson@nyclu.org
cdunn@nyclu.org

*Counsel for Plaintiff*

**TABLE OF CONTENTS**


INTRODUCTION .................................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

STANDARD OF REVIEW ........................................................................................................ 8

ARGUMENT ............................................................................................................................ 9

I. CBP has failed to justify the adequacy of its search for records. ...................................... 9

II. Plaintiff reserves the right to challenge ICE's withholding in part or in full of certain records produced on May 21, 2020. ........................................................................ 12

CONCLUSION ......................................................................................................................... 12

# TABLE OF AUTHORITIES

## Cases

*Carney v. U.S. Dep't of Justice*, 19 F.3d 807 (2d Cir. 1994)........ 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........ 9

*Davis v. DHS*, No. 11-cv-203-ARR-VMS, 2013 WL 3288418 (E.D.N.Y. June 27, 2013) ........ 10

*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) ........ 9

*Garcia v. DOJ*, 181 F. Supp. 2d 356 (S.D.N.Y. 2002)........ 10

*Gelb v. Fed. Reserve Bank of N.Y.*, No. 1:12-cv-4880-ALC, 2014 WL 4402205 (S.D.N.Y. Sept. 5, 2014)........ 9

*In the Matter of the Application of the U.S. for an Order Relating to Telephones Used by Suppressed*, No. 15 M 0021, 2015 WL 6871289 (N.D. Ill. Nov. 9, 2015)........ 3

*Jones v. United States*, 168 A.3d 703 (D.C. 2017) ........ 2, 3

*Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177 (2d Cir. 1988)........ 9

*N.Y. Times Co. v. DOJ*, 872 F. Supp. 2d 309 (S.D.N.Y. 2012) ........ 2

*Nat'l Day Laborer Org. Network v. ICE*, 877 F. Supp. 2d 87 (S.D.N.Y. 2012) ........ 9, 10

*Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) ........ 8

*State v. Andrews*, 134 A.3d 324 (Md. Ct. Spec. App. 2016) ........ 2, 3

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989)........ 9

*U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991)........ 9

*United States v. Lambis*, 197 F. Supp. 3d 606 (S.D.N.Y. 2016)........ 2, 3

*Weisberg v. DOJ*, 705 F.2d 1344 (D.C. Cir. 1983)........ 9

## Statutes and Rules

5 U.S.C. §552........ 6, 9

Fed. R. Civ. P. 56(a) ........ 9

## INTRODUCTION

This litigation concerns a Freedom of Information Act ("FOIA") request (the "Request")[1] submitted by Plaintiff American Civil Liberties Union ("ACLU") to Defendants U.S. Customs and Border Protection ("CBP") and U.S. Immigration and Customs Enforcement ("ICE") seeking records about the agencies' acquisition and use of cell site simulator technology.

Cell site simulators are powerful surveillance devices that permit the government to precisely and surreptitiously locate and track people's cell phones. Although law enforcement agencies' use of this technology was once cloaked in extraordinary secrecy, in recent years federal, state, and local law enforcement agencies have released significant details about their use of cell site simulators. While it is public knowledge that both CPB and ICE have and use cell site simulators, little else has been known about the use of these devices in the immigration enforcement context. The ACLU's Request seeks to enable the public to assess whether CBP's and ICE's uses of this technology comply with constitutional and legal requirements and are subject to appropriate oversight and control.

The ACLU submitted its Request in 2017. For more than two years, ICE failed to properly process the Request or produce any responsive records, only doing so after the ACLU brought this lawsuit in the fall of 2019. Pursuant to court-ordered deadlines, ICE released in full or in part more than one thousand pages of responsive records, providing some insight into the agency's acquisition and use of cell site simulators. ICE continued to withhold nearly 100 pages of responsive documents for weeks after its final production deadline, however, only producing those records to Plaintiff late on the eve of the filing deadline for the instant brief. Although

---

[1] Plaintiff's Freedom of Information Act Request (May 19, 2017) ("Request") (attached as Exhibit D to Declaration of Alexia Ramirez ("Ramirez Decl.")).

Plaintiff does not now challenge withholdings of information from ICE's initial, timely document production, Plaintiff has been unable to assess whether it seeks to challenge any withholdings in the new, untimely production.

CBP, for its part, has stated that it has searched for, but has failed to identify, any records about cell site simulators. But the agency's no-records response is impossible to square with a 2016 congressional report that explained that as of 2016, CBP had spent two and a half million dollars to purchase 33 cell site simulator devices. In light of that report, and in light of records produced by ICE in this litigation discussing CBP's use of cell site simulators, CBP has failed to establish the adequacy of its search for responsive records.

CBP's response violates FOIA. As a result, Plaintiff respectfully requests that this Court order CBP to conduct an adequate search for responsive records and promptly produce them.

## STATEMENT OF FACTS[2]

Cell site simulators, also known as "Stingrays" or "IMSI catchers," impersonate a wireless service provider's cell tower, prompting cell phones and other wireless devices in the area to communicate with them. *See* Compl. ¶ 2, ECF No. 1; Dep't of Homeland Sec., Policy Directive 047-02: Department Policy Regarding the Use of Cell-Site Simulator Technology at 2–3 (Oct. 19, 2015) ("DHS Policy") (attached as Exhibit A to Ramirez Decl.); *see generally, e.g.*, *United States v. Lambis*, 197 F. Supp. 3d 606, 609 (S.D.N.Y. 2016) (describing cell site simulator technology); *Jones v. United States*, 168 A.3d 703, 709 (D.C. 2017) (same); *State v. Andrews*, 134 A.3d 324 (Md. Ct. Spec. App. 2016) (same). The devices are commonly used in two ways: to collect unique numeric identifiers associated with phones in a given area in order to

[2] While parties ordinarily file Local Rule 56.1 Statements of Material Facts when moving for summary judgment, courts in this Circuit generally do not require such statements in FOIA cases. *See, e.g.*, *N.Y. Times Co. v. DOJ*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012).

identify the phones and their users, and to ascertain the location of a phone when agents know its unique numeric identifier but not its precise location. *See* DHS Policy at 2 (Ramirez Decl. Ex. A).

Both uses of the technology raise serious issues under the Fourth Amendment. Collecting unique identifiers of all phones in an area necessarily results in collection of the location data of many bystanders. And using cell site simulators to ascertain the whereabouts of a specific cell phone can reveal the potentially sensitive location of its owner, including that they are in a constitutionally protected place, such as a home, that has traditionally been immune from search unless law enforcement agents obtain a warrant based on probable cause. Further, even when a cell site simulator is used to locate a particular suspect's phone, it necessarily solicits identifying information from bystanders' phones as well. Cell site simulators may also interfere with nearby cellphones' connection to the cellular network, meaning they can affect not only the intended target, but also bystanders. For these reasons, courts have held the Fourth Amendment's warrant requirement applies to use of cell site simulators, *see, e.g.*, *Lambis*, 197 F. Supp. 3d at 611; *Jones*, 168 A.3d at 716–17; *Andrews*, 134 A.3d at 394–95, and have imposed especially stringent minimization and particularity requirements to mitigate constitutional violations. *See, e.g.*, *In the Matter of the Application of the U.S. for an Order Relating to Telephones Used by Suppressed*, No. 15 M 0021, 2015 WL 6871289, at *3–4 (N.D. Ill. Nov. 9, 2015).

In 2015, the Department of Homeland Security ("DHS") adopted a policy governing the use of cell site simulators by its component agencies (including CBP and ICE). The policy includes requirements that the agencies obtain a warrant absent exigent or exceptional circumstances, make accurate and candid disclosures to the magistrate in the warrant application,

and implement certain recordkeeping and oversight measures. *See* DHS Policy at 4–7 (Ramirez Decl. Ex. A).

A 2016 report of the U.S. House of Representatives Committee on Oversight and Government Reform disclosed that in fiscal years 2010 to 2014, ICE and CBP spent, respectively, approximately $10,500,000 and $2,500,000 to acquire and use cell site simulator technology. H.R. Comm. On Oversight & Gov't Reform, Law Enforcement Use of Cell-Site Simulation Technologies: Privacy Concerns & Recommendations at 13–14 (2016) ("House Report")[3] (attached as Exhibit B to Ramirez Decl.). According to the House Report, as of 2016, ICE possessed 59 cell site simulators and CBP possessed 33 cell site simulators. *Id.* at 13–14. The Committee explained that this information was based on a briefing provided by DHS to committee staff on May 22, 2015. *Id.* at 14 n.43.

Despite the House Report's revelation of ICE's and CBP's purchase of cell site simulators, little has been publicly known about the agencies' use of the technology. In 2017, the *Detroit News* published an article detailing ICE's use of a cell site simulator to locate an individual for arrest and prosecution on immigration-related charges.[4] The article left unanswered a number of questions about what kinds of investigations immigration and border enforcement authorities use cell site simulators in, how often the technology is used, and what policies and practices constrain those uses. In order to answer these and related questions, the ACLU submitted the Request to CBP and ICE on May 19, 2017, seeking ten categories of records about the agencies' acquisition and use of cell site simulators. *See* Compl. ¶ 12; Request

[3] Available at https://web.archive.org/web/20170221015653/https://oversight.house.gov/wp-content/uploads/2016/12/THE-FINAL-bipartisan-cell-site-simulator-report.pdf.

[4] *See* Robert Snell, *Feds Use Anti-Terror Tool to Hunt the Undocumented*, Detroit News (May 18, 2017), http://www.detroitnews.com/story/news/local/detroit- city/2017/05/18/cell-snoopingfbi-immigrant/101859616 (attached as Exhibit C to Ramirez Decl.).

at 3–4 (Ramirez Decl. Ex. D). Among the information sought within those ten categories were: policy and guidance documents concerning the agencies' use of cell site simulators; records reflecting the number of times cell-site simulators were deployed in the jurisdiction of each field office; records reflecting the number of times each agency requested the assistance of other law enforcement agencies; records regarding any auditing programs; documents regarding the purchase of cell site simulator equipment and related software; and records concerning the use of cell site simulators in particular immigration investigations and court proceedings. Request at 3–4 (Ramirez Decl. Ex. D).

On May 24, 2017, CBP issued a "final" response to the Request, stating that the agency had "conducted a comprehensive search of files within the CBP databases" but was "unable to locate or identify any responsive records." CBP Final Response Letter (May 24, 2017) (attached as Exhibit E to Ramirez Decl.). Plaintiff appealed CBP's final response on the grounds that the agency conducted an inadequate search for responsive records. Plaintiff Appeal of CBP Final Response (June 19, 2017) (attached as Exhibit F to Ramirez Decl.). Specifically, Plaintiff pointed out that in light of the House Report documenting the agency's purchase and possession of cell site simulators, a reasonably calculated search would have identified responsive records. *Id.* at 1–2. By letter dated July 13, 2017, CBP stated that in response to Plaintiff's appeal, the agency had conducted a second search of CBP offices and had again identified no responsive records. CBP Letter Responding to Appeal (July 13, 2017) (attached as Exhibit G to Ramirez Decl.).

On September 20, 2017, ICE provided a response letter to Plaintiff, but mischaracterized the Request as seeking only the first of the ten categories sought. ICE Final Response Letter (Sept. 20, 2017) (attached as Exhibit H to Ramirez Decl.). The letter stated that ICE had

conducted a search, but that "no records responsive to [the] request were found." *Id.* at 1. The same day, Plaintiff responded to the agency seeking clarification as to whether the agency intended to respond to the nine other categories of the Request. ICE Response to Clarification Email (Oct. 18, 2017) (attached as Exhibit I to Ramirez Decl.). By letter dated October 18, 2017, ICE construed Plaintiff's inquiry as an administrative appeal and determined that "new search(s) or, modifications to existing search(s), could be made." ICE Response to Clarification Email (Oct. 18, 2017) (attached as Exhibit J to Ramirez Decl.). The agency remanded the Request to the ICE FOIA Office for processing. *Id.*

For more than two years, Plaintiff received no further correspondence or responsive records from CBP or ICE.

In October 2019, Univision published a new account of ICE using a cell site simulator to locate an individual for arrest and prosecution on immigration-related charges, highlighting the continuing public interest in access to information about immigration authorities' use of this technology.[5]

Having exhausted administrative remedies, Plaintiff filed this lawsuit on December 11, 2019, asserting that Defendants' failure to promptly make available records sought by the Request, and to make an adequate search for records responsive to the Request, violates FOIA, 5 U.S.C. §552(a)(3)(A), (C), (D). *See* Compl. ¶¶ 31–35.

At a February 3, 2020 initial conference with the Court, Defendants represented that both agencies were now processing the Request, stating that "ICE is able to make an initial production

[5] Jose Pagliery, *ICE in New York Has a Spy Tool to Hunt Undocumented Immigrants Via Their Cell Phones*, Univision (Oct. 17, 2019), https://www.univision.com/local/nueva-york-wxtv/ice-in-new-york-has-a-spy-tool-to-hunt- undocumented-immigrants-via-their-cell-phones (attached as Exhibit K to Ramirez Decl.).

by March 3" and CBP is "in the midst of trying to understand its volume of responsive records." Conference Transcript at 2 (Feb. 3, 2020) (ECF No. 19) ("Transcript") (attached as Exhibit L to Ramirez Decl.). The Court ordered CBP and ICE to respond to Plaintiff's Request by March 3, 2020. *Id.* at 2–3. On February 18, 2020, in an undocketed telephonic order, the Court granted ICE's telephonic request for an extension, ordering the agency to complete production of responsive documents by April 2, 2020. CBP's March 3, 2020, deadline remained unchanged.

On March 26, 2020, CBP notified Plaintiff that the agency had "completed a supplemental search for records responsive to [the] request," and, again, "no responsive records were identified." CBP Final Response Letter (Mar. 26, 2020) (attached as Exhibit M to Ramirez Decl.). To date, CBP has provided no explanation for the discrepancy between the 2016 House Report showing expenditure of approximately $2.5 million to purchase more than 30 cell site simulators, and the agency's failure to identify records in its files concerning these purchases or any subsequent use of the technology.

ICE, on the other hand, identified 1,186 pages of responsive records. ICE Initial Production Letter (Mar. 4, 2020) (attached as Exhibit N to Ramirez Decl.). ICE produced 1,094 pages in whole or in part on March 4, 2020, with redactions asserted pursuant to several FOIA exemptions. *Id.* Negotiations between Plaintiff and ICE resulted in two supplemental productions, in which the agency lifted certain redactions to a subset of records. ICE Supplemental Production Letter (Apr. 28, 2020) (attached as Exhibit O to Ramirez Decl.); ICE Second Supplemental Production Letter (May 20, 2020) (attached as Exhibit P to Ramirez Decl.).

In its March 4, 2020, letter, ICE informed Plaintiff that it was withholding 92 pages of responsive records that "require[d] further coordination with other agencies/components." ICE

Production at 2 (Ramirez Decl. Ex. D). Despite repeated queries by Plaintiff about the status of the 92 pages, ICE failed to produce them by the Court-ordered April 2, 2020 deadline.

At 9:21pm on May 21, 2020, the eve of Plaintiff's motion for summary judgment deadline, ICE produced the responsive records that it had withheld pending coordination with various DHS components. ICE produced 81 pages of records in whole or in part, with redactions asserted pursuant to several FOIA exemptions, and withheld 14 pages in full. *See* ICE Third Supplemental Production Letter (May 21, 2020) (attached as Exhibit Q to Ramirez Decl.).

Among the records included in ICE's May 21, 2020, production are a partially redacted December 4, 2017, letter from DHS to Senator Ron Wyden, and a partially redacted November 2017 communication from DHS to Senator Al Franken. Letter from James D. Nealon, DHS, to Sen. Wyden (Dec. 4, 2017) ("DHS Wyden Letter") (attached as Exhibit R to Ramirez Decl.); DHS Response to Senator Al Franken's August 24, 2017 Letter (Nov. 2017) ("DHS Franken Communication") (attached as Exhibit S to Ramirez Decl.). Both documents discuss CBP's use of cell site simulators, explaining that "U.S. Customs and Border Protection (CBP) has made limited use of cell site simulators," DHS Wyden Letter at 1 (Ramirez Decl. Ex. R), "CBP has made limited use of this technology," DHS Franken Communication at 1 (Ramirez Decl. Ex. S), and "CBP is in the process of developing internal operational policy governing the use of CSS technology," *id.* at 2.

**STANDARD OF REVIEW**

Congress enacted FOIA "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The statute was designed "to pierce the veil of administrative secrecy and to open agency

action to the light of public scrutiny." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

At summary judgment, the burden is on the agency to demonstrate that its search was reasonable and to justify any withholding of records. *Ray*, 502 U.S. at 173; *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). A court's review of whether the agency has met its burden is *de novo*, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989); 5 U.S.C. § 552(a)(4)(B), and "all doubts [are] resolved in favor of disclosure." *Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988) (citing *Rose*, 425 U.S. at 361–62). Summary judgment is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ARGUMENT

### I. CBP has failed to justify the adequacy of its search for records.

An agency bears the burden of demonstrating that its search was adequate. *Carney*, 19 F.3d at 812. To do this, the agency must "show beyond material doubt" that it has "conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see Nat'l Day Laborer Org. Network v. ICE*, 877 F. Supp. 2d 87, 95 (S.D.N.Y. 2012). An agency typically attempts to make this showing through "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search." *Carney*, 19 F.3d at 812. But these submissions cannot be boilerplate. "[A]n agency affidavit or declaration must describe in reasonable detail the scope of the search" for responsive records, including the specific "search terms or methods employed." *Gelb v. Fed. Reserve Bank of N.Y.*, No. 1:12-cv-4880-ALC, 2014 WL 4402205, at *4 (S.D.N.Y. Sept. 5, 2014) (quoting *Davis v.*

*DHS*, No. 11-cv-203-ARR-VMS, 2013 WL 3288418, at *6 (E.D.N.Y. June 27, 2013)); *see also Garcia v. DOJ*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002) (citation omitted). A search is inadequate where "the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory." *Nat'l Day Laborer Org. Network*, 877 F. Supp. 2d at 96 (citation and quotation marks omitted).

CBP maintains that it is unable to identify any responsive records, *see* CBP Final Response Letter (Mar. 26, 2020) (Ramirez Decl. Ex. M), but it has not provided any explanation as to how its search was conducted. Without that, it is impossible to assess whether that search was reasonable. But public information, including the House Report and records produced by ICE in this very litigation, cast serious doubt on the agency's claim. Indeed, this information "raises serious doubts as to the completeness of the agency's search," *Nat'l Day Laborer Org. Network*, 877 F. Supp. 2d at 96, and strongly suggests that an adequate search by CBP would have identified responsive records. According to the House Report, CBP possessed at least 33 cell site simulator devices as of 2016, for which it had spent approximately $2.5 million. House Report at 14 (Ramirez Decl. Ex. B). At a minimum, CBP should be able to identify records regarding the purchase or acquisition of the referenced equipment, which would be responsive to Item 9 of Plaintiff's FOIA request. *See* Request at 4 (Ramirez Decl. Ex. D). Moreover, after investing in 33 cell site simulator devices, it is fanciful to think that CBP has not used them, meaning that the agency would also have records responsive to the portions of the request covering deployment and use of the technology. *See id.* at 3–4. Indeed, in 2017, DHS informed members of the U.S. Senate that CBP has used cell site simulators. DHS Wyden Letter at 1 (Ramirez Decl. Ex. R); DHS Franken Communication at 1 (Ramirez Decl. Ex. S).

DHS also disclosed to Senator Franken in 2017 that "CBP is in the process of developing internal operational policy governing the use of CSS technology." DHS Franken Communication at 2 (Ramirez Decl. Ex. S). That makes sense, as binding DHS policy requires that "[e]ach Component that uses cell-site simulators shall develop operational policy or procedures to govern the use of this technology." DHS Policy at 3 (Ramirez Decl. Ex. A). DHS policy also requires that "[e]ach field office shall report to its Component headquarters annual records reflecting the total number of times a cell-site simulator is deployed in the jurisdiction," among other information. *Id*. Accordingly, CBP should also be able to identify records responsive to Items 1 (policy directives and similar documents) and 3 (records reflecting the number of times cell site simulators are used) of the Request. *See* Request at 3 (Ramirez Decl. Ex. D). An adequate search would have returned records responsive to Plaintiff's FOIA request.

CBP has not provided any reasoned explanation of its searches, such as a list of search terms used or a detailed description of places searched. CBP has also not explained the discrepancy between the House Report and other disclosures, and the results of the agency's search. The agency has failed to meet its burden under FOIA to demonstrate beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents.[6]

[6] CBP will have a final opportunity to justify its search when it files its cross-motion for summary judgment and response to Plaintiff's motion for summary judgment. In the event that any CBP declaration attached to that filing leaves questions unanswered concerning the adequacy CBP's search, Plaintiff reserves the right to seek limited discovery, in the form of a request that CBP produce one or more knowledgeable officials to answer questions under oath at the scheduled July 15, 2020, hearing. *See* Transcript at 4 (Ramirez Decl. Ex. L) (the Court explaining that its "usual practice in [this] situation is to have the person who is saying that come into court under oath, and I question them").

## II. Plaintiff reserves the right to challenge ICE's withholding in part or in full of certain records produced on May 21, 2020.

At the eleventh hour, ICE sent Plaintiff the responsive records that the agency had previously withheld for coordination with DHS components. *See* ICE Third Supplemental Production Letter (May 21, 2020) (Ramirez Decl. Ex. Q). In the few hours between that late production and the filing of this brief, Plaintiff has not been able to review those records in sufficient detail to assess whether Plaintiff seeks to challenge any of the withholdings, much less to brief such challenge. As agreed by both parties earlier today by phone, Plaintiff will review the various withholdings and redactions as expeditiously as possible and will inform ICE, prior to Defendants' June 12, 2020, deadline for their cross-motion for summary judgment and response, whether Plaintiff contests any of the redactions or withholdings from this production. In the event that any redactions or withholdings are contested, Defendants will brief their defense of the withholdings on June 12, 2020, and Plaintiff will respond in its June 26, 2020 reply and response brief.[7]

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's motion for summary judgment. Plaintiff respectfully asks that the Court order CBP to explain how it conducted its

[7] Plaintiff does not now challenge redactions to the records produced by ICE in its previous productions on March 4 and April 28, 2020. However, the parties are currently negotiating over one set of records contained in the earlier production: redacted draft and final versions of ICE's Privacy Threshold Analysis ("PTA") for cell site simulator technology, and a redacted draft version of an ICE Privacy Impact Assessment ("PIA") for surveillance technologies. This negotiation, which was near completion as of yesterday, has been affected by ICE's new production yesterday evening. By agreement of the parties, those negotiations will continue in the lead-up to the deadline for Defendants' response and cross-motion. If negotiations fail to result in mutual agreement as to those records, Defendants will defend their redactions to those records in their June 12, 2020, response and cross-motion, and Plaintiff will brief its position in its June 26 response and reply brief. Defendants have agreed that Plaintiff does not now waive or forfeit any objection to redactions to the draft and final PTA and draft PIA.

prior searches and conduct a new search for responsive records. Plaintiff also respectfully seeks leave of the court to preserve its ability to challenge withholdings in records produced by ICE on May 21, 2020.

May 22, 2020

Respectfully submitted,

/s/ *Alexia Ramirez*
Alexia Ramirez
Nathan Freed Wessler
Brett Max Kaufman
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654
aramirez@aclu.org
nwessler@aclu.org
bkaufman@aclu.org

Robert Hodgson
Christopher Dunn
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300
rhodgson@nyclu.org
cdunn@nyclu.org

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of May, 2020, I electronically filed the foregoing Brief in Support of Plaintiff's Motion for Summary Judgment using the Court's CM/ECF system. I further certify that I transmitted a copy of this filing to counsel for Defendants via email to Jennifer.Simon@usdoj.gov.

/s/ *Alexia Ramirez*

Alexia Ramirez
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654
aramirez@aclu.org