UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION,<br>            *Plaintiff*,<br><br>                         v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION AND UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,<br>            *Defendants*. | Civil Action No. 19-cv-11311 |

## DECLARATION OF JAMES V.M.L. HOLZER

I, James V.M.L. Holzer, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Deputy Chief Freedom of Information Act ("FOIA") Officer for the Department of Homeland Security ("DHS") Privacy Office ("Privacy Office").

2. In this capacity, I am the DHS official responsible for implementing FOIA policy across DHS and responding to requests for records under the FOIA, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and other applicable records access provisions. I have been employed by the DHS Privacy Office in this capacity since May 2016. I previously served as the Director of the Office of Government Information Services within the National Archives and Records Administration, and prior to that I served as the Senior Director of FOIA Operations for DHS.

3. Through the exercise of my official duties, I have become familiar with the background of Plaintiffs' FOIA request, and I have also become familiar with the background of this litigation. I make the statements herein based on my personal knowledge, as well as based on information that I acquired while performing my official duties. My declaration is limited to the DHS response to Plaintiff on May 21, 2020 associated with a

4. 79-page referral and a 16-page consultation that DHS received from United States Immigration and Customs Enforcement (ICE) on April 20, 2020.

4. After conducting a line by line review of the records, by letter dated May 21, 2020, DHS and ICE advised Plaintiff that they had applied FOIA Exemptions (b)(5), (b)(6), (b)(7)(C) and (b)(7)(E) to portions of the 95-pages. (this total includes both the referral and consultation referenced, above, in paragraph 3 of my declaration).

5. It is my understanding that Plaintiff is contesting only four of the documents associated with this 95-page production.  All four of these documents are part of the 79-page referral that ICE made to DHS on April 20, 2020, and are described in detail below. Regarding these four documents, only FOIA Exemptions (b)(5), (6) and (7)(E) are at issue.

6. As to Document 1, DHS withheld in part pursuant to FOIA Exemptions (b)(6) and 7(E) portions of a thirty-page slide presentation dated February 6, 2018 and titled  "Cellular Threats" was prepared by the National Cybersecurity and Communications Integration Center (NCCIC) to brief the Federal Mobile Technology Forum as hosted by the Federal Chief Information Officer Council's Mobile Technology Tiger Team.  This is a federal interagency organization and the information contained in the slide presentation was not shared outside of the federal government.  [Bates pages 2020-ICLI-00013 1138 – 2020-ICLI-00013 1167].  Regarding the slide presentation, DHS applied FOIA Exemption 6 to protect an individual's name and email address, the release of which would constitute an unwarranted invasion of personal privacy. This individual was not a senior leader of public facing employee and so there is no public interest in this individual's identity to outweigh this individual's privacy interest.  In addition, DHS withheld information

pertaining to law enforcement techniques and procedures referenced in the slide deck pursuant to FOIA Exemption 7(E).   It is well known that DHS is a law enforcement agency; DHS' mission is to safeguard the American people and our homeland.   The entirety of the document is a briefing on mobile wireless network vulnerabilities in the United States.   The slide deck covers specific vulnerabilities and common strategies for hacking mobile wireless networks.   DHS applied FOIA Exemption 7(E) to protect law enforcement information documenting in detail vulnerabilities to mobile networks in this presentation, including:

- Detailed explanations of the basis for exploits to hack mobile phone networks and explanations of how mobile phone networks could be brought down;
- A map portraying mobile network vulnerabilities in Massachusetts;
- A chart summarizing vulnerabilities detected in specific cellular carrier networks;
- Identification of a threat posed by rural wireless operators;
- A detailed account of Russian hacking of U.S. networks;
- A list of specific countries whose telecom assets have attacked U.S. mobile phone subscribers during the preceding six months;
- Identification of call interception services available on the dark web;
- Detailed descriptions of rogue cellular base stations in the National Capitol Region; and
- Examples of mobile phone network vulnerabilities that directly affect law enforcement and national security communications.

Making this type of information public promotes potential criminal violations of laws prohibiting unlawful interception of protected communications.   In particular, disclosure

of the redacted portions of the presentation may reveal nonpublic strategies relied upon by law enforcement to conduct surveillance using specialized base stations.   Making such strategies public would interfere with law enforcement's ability to conduct some types of lawful surveillance and disclosure of this information could allow individuals to circumvent the law by modifying their activities to avoid detection.

7. As to Document 2, DHS withheld in part pursuant to FOIA Exemption 7(E) portions of a three-page letter from the Assistant Secretary for International Affairs, Office of Strategy, Policy and Plans to Senator Ron Wyden. [Bates pages 2020-ICLI-00013 1168 – 2020-ICLI-00013 1170].[1]   Specifically, DHS withheld the entirety of two paragraphs and, in addition, portions of two additional paragraphs that contain law enforcement sensitive information the disclosure of which would reveal how the cell similar technology works and in what instances the cell simulator technology is used by DHS. Here too, the disclosure of this information and strategies if made public would interfere with law enforcement's ability to conduct some types of lawful surveillance and disclosure of this information could allow individuals to circumvent the law by modifying their activities to avoid detection.

8.   As to Document 3, DHS withheld in part pursuant to FOIA Exemption 7(E) portions of a five-page analysis of DHS' response to Senator Al Franken's August 24, 2017 Letter. [Bates pages 2020-ICLI-00013 1171 – 2020-ICLI-00013 1175].   Exemption 7(E), which affords protection to all law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose

---

[1] DHS is not asserting (b)(7)(E) on Bates page 2020-ICLI-00013 1168 because ICE previously released this content on Bates page 2020-ICLI-00013 246 on March 4, 2020.

guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." In all of these documents, DHS applied FOIA Exemption 7(E), 5 U.S.C. §552(b)(7)(E), to protect law enforcement sensitive information regarding the vulnerabilities of wireless mobile networks. The redacted information was collected for law enforcement purposes to assist in prevention of illegal intrusions into and manipulation of wireless mobile networks. Law enforcement relies upon secure, reliable wireless mobile networks to conduct voice and data communications. Exposure of network vulnerabilities will interfere with the effective coordination of critical law enforcement operations.

9. As to Document 4, DHS withheld in full this ten-page draft Report to Congress for fiscal year 2017 pursuant to FOIA Exemption 5.  [Bates pages 2020-ICLI-00013 1176 – 2020-ICLI-00013 1185].  This document is titled "Use of International Mobile Subscriber Identity (IMSI) Catcher Technology" and was drafted in response to Senate Report 114-264.  FOIA Exemption 5 protects from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  DHS has made the determination that this document is a draft and not a final version of the report because (1) only three of the five sections noted in the table of contents are included in the draft and (2) the document is undated – marked instead: "Month XX, 2017" on multiple pages.  If such a draft, un-finalized report, and/or draft information regarding agency policies and enforcement were released, the public could potentially become confused regarding ICE's mission and enforcement activities.

I declare the foregoing is true and correct to the best of my knowledge and belief, under penalty of perjury, pursuant to 28 U.S.C. § 1746.

Dated the 12th day of June 2020

_____
James V.M.L. Holzer
Deputy Chief FOIA Officer
U.S. Department of Homeland Security