## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

AMERICAN CIVIL LIBERTIES UNION,

> *Plaintiff*,

v.

UNITED STATES CUSTOMS AND
BORDER PROTECTION and UNITED
STATES IMMIGRATION AND CUSTOMS
ENFORCEMENT,

> *Defendants*.

No. 1:19-cv-11311 (JSR)

## <u>REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT</u>

Alexia Ramirez
Nathan Freed Wessler
Brett Max Kaufman
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
aramirez@aclu.org
nwessler@aclu.org
bkaufman@aclu.org

Robert Hodgson
Christopher Dunn
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300
rhodgson@nyclu.org
cdunn@nyclu.org

*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ 1

INTRODUCTION ..................................................................................................... 3

ARGUMENT .............................................................................................................. 5

    I.    The documents at issue are not properly withheld under Exemption 7(E). ........................ 5

        A.    ICE's withholdings in the Wyden Letter are not proper under Exemption 7(E) because the given justification is vague and conclusory, and the information withheld is already known to the public. ................................................................................. 6

        B.    Whether disclosure could reduce the effectiveness of a publicly known technique or procedure does not make withholdings under 7(E) proper. ........................................... 12

        C.    ICE's withholdings in the Franken Communication are not proper under Exemption 7(E) because the given justification is vague and conclusory, and the information withheld is already known to the public. ..................................................................... 12

    II.    *In camera* review of the documents at issue is appropriate. ............................................. 16

CONCLUSION ......................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*ACLU of N. Cal. v. Dep't of Justice*, 880 F.3d 473 (9th Cir. 2018)...................................... 7

*ACLU v. Dep't of Homeland Sec.*, 243 F. Supp. 3d 393 (S.D.N.Y. 2017) .................... 6, 7, 12, 13

*ACLU v. Dep't of Justice*, 418 F. Supp. 3d 466 (N.D. Cal. 2019).................................. 6

*ACLU v. Office of the Dir. of Nat'l Intelligence*, 2011 WL 5563520 (S.D.N.Y. Nov. 15, 2011) .. 7

*Albuquerque Publ'g Co. v. Dep't of Justice*, 726 F. Supp. 851 (D.D.C. 1989)........................... 13

*Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*,
   603 F. Supp. 2d 354 (D. Conn. 2009)………………………………………………………..7

*Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*,
   626 F.3d 678 (2d Cir. 2010)................................................................. 6, 13

*Brown v. Fed. Bureau of Investigation*, 873 F. Supp. 2d 388 (D.D.C. 2012).............................. 14

*Carney v. Dep't of Justice*, 19 F.3d 807 (2d Cir. 1994)..................................................... 5

*Dent v. Exec. Office for U.S. Attorneys*, __ F. Supp. 2d __, Civil Action No. 12-0420 (EGS),
   2013 WL 782625 (D.D.C. March 2, 2013)................................................ 14

*Elec. Frontier Found. v. Dep't of Defense*, No. C-09 05640 SI,
   2012 WL 4364532 (N.D. Cal. Sept. 24, 2012) ......................................... 12

*Fitzgibbon v. U.S. Secret Serv.*, 747 F. Supp. 51 (D.D.C. 1990).................................. 14

*Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473 (2d Cir. 1999)................................... 5

*In re Application of the U.S. for an Order Authorizing the Installation and Use of a Pen Register
   and Trap and Trace Device*, 890 F. Supp. 2d 747 (S.D. Tex. 2012)......................... 8

*In re Application of the U.S. for an Order Relating to Telephones Used by Suppressed*, No. 15 M
   0021, 2015 WL 6871289 (N.D. Ill. Nov. 9, 2015) ................................... 8

*Jones v. United States*, 168 A.3d 703 (D.C. 2017) ............................................... 8, 11

*N.Y. Times Co. v. Dep't of Justice*, 872 F. Supp. 2d 309 (S.D.N.Y. 2012) ................... 17

*Nat'l Sec. Archive v. Fed. Bureau of Investigation.*, 759 F. Supp. 872 (D.D.C. 1991) ............... 13

*People for the Am. Way Found. v. Nat'l Park Serv.,* 503 F. Supp. 2d 284 (D.D.C. 2007)........... 17

*People v. Gordon*, 68 N.Y.S.3d 306 (N.Y. Sup. Ct. Kings Cty. 2017) ......................... 8

*Schwartz v. Drug Enf't Admin.*, 692 F. App'x. 73 (2d Cir. 2017) .................................................. 6

*State v. Andrews*, 134 A.3d 324 (Md. Ct. Spec. App. 2016) .................................................. 8, 11

*State v. Sylvestre*, 254 So. 3d 986 (Fla. 4th Dist. Ct. App. 2018) .................................................. 8

*State v. Tate*, 849 N.W.2d 798 (Wis. 2014) .................................................. 11

*United States v. Ellis*, 270 F. Supp. 3d 1134 (N.D. Cal. 2017) .................................................. 8

*United States v. Lambis*, 197 F. Supp. 3d 606 (S.D.N.Y. 2016) .................................................. 8, 11

*United States v. Patrick*, 842 F.3d 540 (7th Cir. 2016) .................................................. 11

## Statutes

5 U.S.C. § 552 .................................................. 5, 6, 16

## Other Authorities

Ashkan Soltani & Craig Timberg, *Tech Firms Try to Pull Back the Curtain on Surveillance Efforts in Washington*, Wash. Post (Sept. 17, 2014) .................................................. 14

Brad Heath, *Police Secretly Track Cellphones to Solve Routine Crimes*, USA Today (Aug. 23, 2015) .................................................. 8

Fred Clasen-Kelly, *CMPD's Cellphone Tracking Cracked High-Profile Cases*, Charlotte Observer (Nov. 22, 2014) .................................................. 8

Jeremy Scahill & Margot Williams, *Stingrays: A Secret Catalog of Government Gear for Spying on Your Cellphone*, Intercept (Dec. 17, 2015) .................................................. 8

Kim Zetter, *Feds Admit Stingrays Can Disrupt Cell Service of Bystanders*, Wired (March 1, 2015) .................................................. 14

Stephanie K. Pell & Christopher Soghoian, *Your Secret Stingray's No Secret Anymore: The Vanishing Government Monopoly Over Cell Phone Surveillance and Its Impact on National Security and Consumer Privacy*, 28 Harv. J.L. & Tech. 1 (2014) .................................................. 8, 14

## INTRODUCTION

This litigation concerns a Freedom of Information Act ("FOIA") request ("Request") submitted by Plaintiff American Civil Liberties Union ("ACLU") to Defendants U.S. Customs and Border Protection ("CBP") and U.S. Immigration and Customs Enforcement ("ICE") seeking records about the agencies' acquisition and use of cell site simulator technology.

As Plaintiffs have explained, ECF No. 22, at 2–3, cell site simulators enable the government to precisely and surreptitiously locate and track people's cell phones. The ACLU's Request seeks to enable the public to assess whether CBP's and ICE's use of this surveillance technology comports with constitutional and legal requirements, as well as whether the agencies are subject to appropriate oversight. To this end, agency documents that articulate the policies and practices governing the use of cell site simulators and discuss the legal and practical constraints on use of the technology are of significant public interest.

Over the course of this litigation, the parties have greatly narrowed the issues in dispute. What remains at issue are just two documents that ICE identified as responsive to Plaintiff 's Request, referred to the Department of Homeland Security ("DHS") for coordination, and produced to Plaintiff with redactions on the eve of Plaintiff's motion for summary judgment deadline.[1] Plaintiff now exercises its reserved right to challenge the withholdings in those two records: a December 4, 2017 letter from DHS to Senator Ron Wyden, and a November 2017 communication from DHS to Senator Al Franken. *See* ECF No. 23-18 (Letter from James D. Nealon, DHS, to Sen. Wyden (Dec. 4, 2017) ("Wyden Letter," or "Document 2" in Defendants'

---

[1] Plaintiff no longer challenges the adequacy of CBP's search for records responsive to the Request. *See* Pl's MSJ Memo 9–11 (ECF No. 22); Defs' Memo 11–12 (ECF No. 25). Additionally, Plaintiff no longer challenges ICE's withholding in full or in part of Document 1 and Document 4 identified in Defendants' summary judgment brief. *See* Defs' Memo at 8 (ECF No. 25).

brief)); ECF No. 23-19 (DHS Response to Senator Al Franken's August 24, 2017 Letter (Nov. 2017) ("Franken Communication," or "Document 3" in Defendants' brief).[2] Specifically, the ACLU challenges the redaction on page two of the Wyden Letter,[3] ECF No. 23-18, at 3 (Bates page 1169), and the redactions on pages one and four of the Franken Communication, ECF No. 23-19, at 2, 5 (Bates pages 1171, 1174).

Defendants maintain that the redactions in these documents are justified by FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E), and cannot be lifted because they conceal sensitive law enforcement techniques and procedures. But the conclusory declaration of a DHS official put forth by Defendants does not sufficiently demonstrate that the agency's redactions are consistent with Exemption 7(E). The protection afforded by Exemption 7(E) does not encompass information that is not a law enforcement technique, procedure, or guideline, and it does not permit withholding of information that is already generally known to the public.

Because Defendant has failed to justify its withholdings, the Court should grant summary judgment for the ACLU. Alternatively, the Court should order ICE to submit unredacted

---

[2] Because ICE produced these documents a month-and-a-half after the court-imposed deadline and just hours before Plaintiff was due to file its motion for summary judgment and supporting brief, Plaintiff was unable to determine whether it sought to challenge redactions to the documents when it filed its summary judgment motion. With the agreement of Defendants, Plaintiff reserved the right to challenge any withholdings when filing the instant reply and opposition brief. *See* ECF No. 21, at 1–2; ECF No. 22, at 12. Plaintiff is simultaneously filing a supplemental motion for summary judgment, making clear that it seeks summary judgment in its favor as to the two disputed documents.

[3] At the request of DHS, ICE redacted three blocks of text on page one of the Wyden Letter, ECF No. 23-18, at 2 (Bates page 1168), but subsequently withdrew its assertion of Exemption 7(E) as to those redactions because the agency had already released a different letter containing identical, but unredacted text. Holzer Decl. at 4 n.1, ECF No. 29. The unredacted version of that text is found at Bates page 246 and is attached as Exhibit A to the Declaration of Nathan Freed Wessler ("Wessler Decl.").

versions of the disputed records for *in camera* review, so that the Court may determine whether the information withheld from release is in fact exempt from disclosure.

## ARGUMENT

To prevail at the summary judgment stage in a FOIA case, the defending agency bears the burden of demonstrating that any withheld material is exempt from disclosure. *See* 5 U.S.C. § 552(a)(4)(B); *Carney v. Dep't of Justice,* 19 F.3d 807, 812 (2d Cir. 1994). Although the agency may satisfy this burden by producing "[a]ffidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption," *id.,* these submissions must be "relatively detailed and nonconclusory, and . . . submitted in good faith," *Grand Cent. P'ship, Inc. v. Cuomo,* 166 F.3d 473, 488–89 (2d Cir. 1999) (internal quotation marks omitted). This Court reviews the agency's withholding determination *de novo,* 5 U.S.C. § 552(a)(4)(B), according a presumption of good faith to declarations submitted by the defending agency in support of summary judgment, *Carney*, 19 F.3d at 812. Here, although ICE asserts that portions of the two documents at issue may be withheld pursuant to FOIA Exemption 7(E), it has failed to establish that the redacted information is protected under those provisions.

## I.     The documents at issue are not properly withheld under Exemption 7(E).

ICE contends that the contested documents have been appropriately redacted in accordance with Exemption 7(E). But ICE has failed to adequately justify redactions to the Wyden Letter and the Franken Communication because its declaration is too vague and conclusory to establish that the withheld material is a technique or procedure that is not already publicly known.[4] Indeed, the great volume and variety of information about cell site simulator

---

[4] Exemption 7(E) also exempts "guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law," but Defendant

technology and its use by law enforcement that has been publicly released by ICE, DHS, and

other law enforcement agencies demonstrates that ICE's withholdings are not justified here.

**A. ICE's withholdings in the Wyden Letter are not proper under Exemption 7(E) because the given justification is vague and conclusory, and the information withheld is already known to the public.**

Exemption 7(E) protects from disclosure "records or information compiled for law

enforcement purposes, but only to the extent that the production of such law enforcement records

or information . . . would disclose techniques and procedures for law enforcement investigations

or prosecutions . . . ." 5 U.S.C. § 552(b)(7)(E); *Allard K. Lowenstein Int'l Human Rights Project

v. Dep't of Homeland Sec.*, 626 F.3d 678, 682 (2d Cir. 2010). While the phrase "techniques and

procedures" refers to "how law enforcement officials go about investigating a crime," *Allard K.

Lowenstein Int'l Human Rights Project*, 626 F.3d at 682, the Second Circuit has made clear that

Exemption 7(E) only protects techniques and procedures that are "not generally known to the

public." *Schwartz v. Drug Enf't Admin.*, 692 F. App'x. 73, 74 (2d Cir. 2017); *Doherty v. Dep't of

Justice*, 775 F.2d 49, 52 n. 4 (2d Cir. 1985).

Materials withheld under 7(E) must "truly embody a specialized, calculated technique or

procedure" that is not "apparent to the public." *ACLU v. Dep't of Homeland Sec.*, 243 F. Supp.

3d 393, 404 (S.D.N.Y. 2017); *see also ACLU v. Dep't of Justice*, 418 F. Supp. 3d 466, 478–79

(N.D. Cal. 2019) ("Exemption 7(E) cannot be used to withhold information about a technique

that is generally known to the public when what is at issue is a specific application of that

technique to a specific context."). For example, in *Allard K. Lowenstein International Human

Rights Project v. DHS*, the court held that a memorandum containing specific ranking criteria

---

does not rely on the "guidelines" provision as a basis for withholding. *See* Defs' Memo at 16
(ECF No. 25).

showing how DHS chose targets and sources would reveal techniques or procedures not otherwise known to the public. 603 F. Supp. 2d 354, 364–65 (D. Conn. 2009), *aff'd*, 626 F.3d 678 (2d Cir. 2010). In contrast, in *ACLU of Northern California v. Department of Justice*, the Ninth Circuit addressed the very types of information at issue here, concluding that documents that "describe generally methods for using various technologies"—including cell site simulators—"to obtain a suspect's location information" are not withholdable under Exemption 7(E) because "[t]hese are all publicly known investigative techniques." 880 F.3d 473, 480, 492 (9th Cir. 2018). While "detailed, technical analysis" of publicly known location tracking techniques might be properly withheld, documents that "provide basic technical information about each surveillance method, describe the legal authorization necessary for obtaining location information, and describe legal arguments related to that acquisition" do not fall "within the ambit of Exemption 7(E)." *Id.* at 492 (citation omitted). Just like the documents at issue in *ACLU of Northern California*, the Wyden letter relates "to the use or policies of utilizing" cell site simulators, *id.* at 480, a technology about which much is already publicly known.

Defendants' declarant has asserted merely that the redacted portion of the Wyden Letter "would reveal how the cell site technology works and under what instances the technology is used by DHS." Holzer Decl. ¶ 7. But "[c]ourts require the government to offer more than 'generic assertions' and 'boilerplate' to justify Exemption 7(E) withholding." *ACLU v. Dep't of Homeland Sec.*, 243 F. Supp. 3d at 403 (quoting *ACLU v. Office of the Dir. of Nat'l Intelligence*, 10 Civ. 4419, 2011 WL 5563520, at *11 (S.D.N.Y. Nov. 15, 2011)). Given the context of the challenged redaction in the Wyden Letter, the information withheld likely pertains to cell site simulator techniques and procedures already generally known to the public.

The government's use of cell site simulators has been known to the public for years, as described in judicial opinions, congressional reports, law review articles, and press reports. *See, e.g.*, *United States v. Ellis*, 270 F. Supp. 3d 1134 (N.D. Cal. 2017); *United States v. Lambis*, 197 F. Supp. 3d 606 (S.D.N.Y. 2016); *In re Application of the U.S. for an Order Relating to Telephones Used by Suppressed*, No. 15 M 0021, 2015 WL 6871289 (N.D. Ill. Nov. 9, 2015); *In re Application of the U.S. for an Order Authorizing the Installation and Use of a Pen Register and Trap and Trace Device*, 890 F. Supp. 2d 747, 748 (S.D. Tex. 2012); *Jones v. United States*, 168 A.3d 703 (D.C. 2017); *State v. Sylvestre*, 254 So.3d 986 (Fla. 4th Dist. Ct. App. 2018); *People v. Gordon*, 68 N.Y.S.3d 306 (N.Y. Sup. Ct. Kings Cty. 2017); *State v. Andrews*, 134 A.3d 324 (Md. Ct. Spec. App. 2016); H.R. Comm. On Oversight & Gov't Reform, Law Enforcement Use of Cell-Site Simulation Technologies: Privacy Concerns & Recommendations (2016) ("House Oversight Committee Report") (ECF No. 23-2)[5]; Stephanie K. Pell & Christopher Soghoian, *Your Secret Stingray's No Secret Anymore: The Vanishing Government Monopoly Over Cell Phone Surveillance and Its Impact on National Security and Consumer Privacy*, 28 Harv. J.L. & Tech. 1 (2014).[6]

---

[5] *Available at* https://web.archive.org/web/20170221015653/https://oversight.house.gov/wpcontent/uploads/2016/12/THE-FINAL-bipartisan-cell-site-simulator-report.pdf.

[6] *See also, e.g.*, Fred Clasen-Kelly, *CMPD's Cellphone Tracking Cracked High-Profile Cases*, Charlotte Observer (Nov. 22, 2014), https://www.charlotteobserver.com/news/local/crime/article9235652.html; Brad Heath, *Police Secretly Track Cellphones to Solve Routine Crimes*, USA Today (Aug. 23, 2015), https://www.usatoday.com/story/news/2015/08/23/baltimore-police-stingray-cell-surveillance/31994181/; Jeremy Scahill & Margot Williams, *Stingrays: A Secret Catalog of Government Gear for Spying on Your Cellphone*, Intercept (Dec. 17, 2015), https://theintercept.com/2015/12/17/a-secret-catalogue-of-government-gear-for-spying-on-your-cellphone/; Joseph Goldstein, *New York Police Dept. Has Used Cellphone Tracking Devices Since 2008, Civil Liberties Group Says*, N.Y. Times (Feb. 11, 2016), https://www.nytimes.com/2016/02/12/nyregion/new-yorkpolice-dept-cellphone-tracking-stingrays.html; Joel Kurth, *Michigan State Police Using Cell Snooping Devices*, Detroit News

At least 75 state and local law enforcement agencies located in 27 states and the District of Columbia have confirmed that they own or use cell site simulators, as have at least 14 federal law enforcement, military, and intelligence agencies. *See* ACLU, *Stingray Tracking Devices: Who's Got Them?*, *available at* https://www.aclu.org/maps/stingray-tracking-devices-whos-got-them (attached as Exhibit B to Wessler Decl.). Many of these agencies have released considerable details about how the technology functions and how it is used. This includes Defendant ICE and its parent agency DHS, whose policies governing cell site simulators cover this information. U.S. Dep't of Homeland Sec., Policy Directive 047-02, *Department Policy Regarding the Use of Cell-Site Simulator Technology* (Oct. 19, 2015) ("DHS Cell Site Simulator Policy") (ECF No. 23-1); U.S. Immigration and Customs Enforcement, *Memo re Use of Cell-Site Simulator Technology* (Aug. 31, 2017) ("ICE Cell Site Simulator Policy") (attached as Exhibit C to Wessler Decl.). ICE has also publicly released information about specific models of cell site simulators it has purchased, and has disclosed its purchase of equipment and training to use cell site simulators mounted in aircraft, as well as ground-deployed cell site simulator equipment. *See* U.S. Immigration and Customs Enforcement Response to Christopher Soghoian regarding ICE FOIA Case No. 20l2FOIA5235 (Sept. 2012) (attached as Exhibit D to Wessler Decl.).[7]

Beyond the public's ample general knowledge about the function and capabilities of cell site simulators, much information is public about particular models and their specific capabilities. Numerous law enforcement agencies have released solicitations, invoices, purchase orders, and similar records reflecting the purchase of cell site simulator equipment detailing

---

(Oct. 23, 2015),
https://www.detroitnews.com/story/news/local/michigan/2015/10/22/stingray/74438668/.

[7] *Available at* https://assets.documentcloud.org/documents/2169907/12-09-19-2012-ice-foia-cell-site-simulator.pdf.

which equipment was purchased and how much it cost. *See, e.g.*, Invoice from Harris Corporation to Wilmington, North Carolina, Police Department (Jan. 15, 2014) (attached as Exhibit E to Wessler Decl.); Purchase order from the City of Durham, North Carolina to the Harris Corporation (Jan. 4, 2011) (attached as Exhibit F to Wessler Decl.). Law enforcement agencies have released marketing and promotional materials provided to them by companies selling cell site simulators, including documents advertising the capabilities of specific cell site simulator models. *See, e.g.*, Harris Corp., Kingfish: Portable, Cellular Transceiver System, Rochester Police Department response to Mariko Hirose, New York Civil Liberties Union (Feb. 2016) (attached as Exhibit G to Wessler Decl.)[8]; Harris Corp., AmberJack: Phased Array Direction Finding Antenna, Rochester Police Department response to Mariko Hirose, New York Civil Liberties Union (Feb. 2016) (attached as Exhibit H to Wessler Decl.)[9]; KingFish System, Accessories & Training: Man-Portable and/or Dual-Mode Vehicular Platform, Rochester Police Department response to Mariko Hirose, New York Civil Liberties Union (Feb. 2016) (attached as Exhibit I to Wessler Decl.)[10].

The public also has knowledge of the contexts in which law enforcement agencies typically deploy cell site simulators. A number of law enforcement agencies have released internal rules and guidelines governing their use of cell site simulators. In addition to DHS and ICE, *see* ECF No. 23-1; Wessler Decl. Ex. C, that includes the U.S. Department of Justice, U.S. Dep't of Justice, Department of Justice Policy Guidance: Use of Cell-Site Simulator Technology (Sept. 3, 2015) (attached as Exhibit J to Wessler Decl.)[11]; *Electronic Surveillance Manual*

---

[8] *Available at* https://www.nyclu.org/sites/default/files/Kingfish_ProductDescription.pdf.

[9] *Available at* https://www.nyclu.org/sites/default/files/AmberJack_ProductDescription.pdf.

[10] *Available at* https://www.nyclu.org/sites/default/files/Kingfish_Quote.pdf.

[11] *Available at* https://www.justice.gov/opa/file/767321/download.

*Chapter XIV: Cell Site Simulators / Digital Analyzers/ Triggerfish*, Response from U.S. Dep't of

Justice to Linda Lye, ACLU of Northern California (Aug. 21, 2013) (attached as Exhibit K to

Wessler Decl.), and local law enforcement agencies from California to New York, *see, e.g.*,

Oakland Police Dep't, Policy Manual: Cellular Site Simulator Usage and Privacy (Feb. 2, 2017)

(attached as Exhibit L to Wessler Decl.)[12]; Erie Cty. Sheriff's Office, Memorandum re: Cellular

Tracking Procedures (June 11, 2014) (attached as Exhibit M to Wessler Decl.)[13]. Agencies have

also shared logs that document the types of criminal investigations in which cell site simulators

are used. *See, e.g.*, Log of Tallahassee, Florida, Police Department's uses of IMSI Catchers,

2007-2014 (documenting "incident types" for the logged cell site simulator deployments)

(attached as Exhibit N to Wessler Decl.)[14]; N.Y.P.D., Over the Air Intercepts 2008-2015 (same)

(attached as Exhibit O to Wessler Decl.)[15]. Additionally, Courts have described in considerable

detail how cell site simulators are used in particular investigations. *See, e.g.*, *Jones*, 168 A.3d at

709–10; *Andrews*, 134 A.3d at 329; *United States v. Patrick*, 842 F.3d 540, 542–43 (7th Cir.

2016); *Lambis*, 197 F. Supp. 3d at 609; *State v. Tate*, 849 N.W.2d 798, 803–04 (Wis. 2014).

     In short, there is no dearth of publicly available information on cell site simulator

techniques and procedures. As such, the government must demonstrate that the withheld material

in the Wyden Letter contains investigative techniques or procedures that are not generally known

to the public. *See, e.g.*, *Elec. Frontier Found. v. Dep't of Defense*, No. C-09 05640 SI, 2012 WL

---

[12] *Available at*
http://www2.oaklandnet.com/oakca1/groups/police/documents/webcontent/oak062903.pdf.

[13] *Available at* https://www.nyclu.org/sites/default/files/20140611-2%28b%29-Cellular-
Tracking-Procedures.pdf.

[14] *Available at* https://www.aclu.org/files/assets/floridastingray/03.27.2014%20-
%20Master%20CE%20Log.pdf.

[15] *Available at* https://www.nyclu.org/sites/default/files/summary_overtheairintercept_web.pdf.

4364532, at *6 (N.D. Cal. Sept. 24, 2012) ("[I]f the FBI intends to maintain the 7(E) designation, the FBI must declare that, for each specific redaction of a technique or procedure, that the information withheld goes beyond a generally known technique or procedure."). But the government has made little effort to establish that the withheld information is not publicly known. Instead, the government's declaration relies on vague and conclusory language to justify its withholding.

**B.  Whether disclosure could reduce the effectiveness of a publicly known technique or procedure does not make withholdings under 7(E) proper.**

Defendant's argument that "even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness," Defs' Memo at 14 (ECF No. 25), is mistaken. This is not the first time the government has argued that even "generally known" techniques and procedures may be withheld if disclosure would nullify their effectiveness. *ACLU v. Dep't of Homeland Sec.*, 243 F. Supp. 3d at 402. But, another court in this District soundly rejected that reasoning because "the Second Circuit has not adopted that exception." *Id.* at 404. The rationale was that if the government has already made the information public, any potential impact on the practice's efficacy has already occurred. *See id.* at 405. Thus, in determining whether ICE's withholdings of techniques or procedures under 7(E) are proper, the operative questions remain whether the information is a technique or procedure and whether that technique or procedure is generally known to the public.

**C.  ICE's withholdings in the Franken Communication are not proper under Exemption 7(E) because the given justification is vague and conclusory, and the information withheld is already known to the public.**

As for the Franken Communication, ICE has asserted that it withheld information "to protect law enforcement sensitive information regarding the vulnerabilities of wireless mobile networks." Holzer Decl. ¶ 8. The redacted information was purportedly "collected for law

enforcement purposes to assist in prevention of illegal intrusions into and manipulation of wireless mobile networks." *Id.* The agency further claims that "[l]aw enforcement relies upon secure, reliable wireless mobile networks to conduct voice and data communications" and the "exposure of network vulnerabilities will interfere with the effective coordination of critical law enforcement operations." *Id.* These justifications are insufficient to carry the agency's burden, as they are vague and conclusory, and in any event, relevant information is already publicly known.

ICE's justification for the withholding of information in the Franken Communication is vague and conclusory. The Holzer Declaration does little to explain how the withheld material is a law enforcement technique or procedure beyond saying that the information was gathered to protect wireless mobile networks. But information about vulnerabilities in widely used communications networks is simply not a law enforcement technique or procedure. As the Second Circuit has explained, "as used in Exemption 7(E), a 'technique' is 'a technical method of accomplishing a desired aim' and a 'procedure' is 'a particular way of doing or going about the accomplishment of something.'" *ACLU v. Dep't of Homeland Sec.*, 243 F. Supp. 2d at 402 (quoting *Allard K. Lowenstein Int'l Human Rights Project*, 626 F.3d at 682). The withheld information does not satisfy either definition. The cursory assertion in support of withholding is "inadequate to permit a court to decide whether the exemption was properly claimed." *Albuquerque Publ'g Co. v. Dep't of Justice*, 726 F. Supp. 851, 857 n.9 (D.D.C. 1989) (citation and internal quotation marks omitted); *see also, e.g.*, *Nat'l Sec. Archive v. Fed. Bureau of Investigation.*, 759 F. Supp. 872, 885 (D.D.C. 1991); *Fitzgibbon v. U.S. Secret Serv.*, 747 F. Supp. 51, 60 (D.D.C. 1990). ICE has not provided enough detail to enable a court to conclude that the material may be withheld pursuant to Exemption 7(E). *Brown v. Fed. Bureau of Investigation*, 873 F. Supp. 2d 388, 407 (D.D.C. 2012); *see also, e.g.*, *Dent v. Exec. Office for*

13

*U.S. Attorneys*, ___ F. Supp. 2d ___, Civil Action No. 12-0420 (EGS), 2013 WL 782625, at *12
(D.D.C. March 2, 2013) ("Notwithstanding the categorical protection to law enforcement
techniques and procedures afforded under the first clause of Exemption 7(E), no agency can rely
on a declaration written in vague terms or in a conclusory manner." (citation and internal
quotation marks omitted)).

  Moreover, the Holzer Declaration makes no attempt to establish that if the material is a
technique or procedure, it is one that is not already publicly known. In fact, the public is already
well aware that law enforcement agencies' use of cell site simulators takes advantage of known
vulnerabilities in the U.S. communications networks, disrupting cell service and leaving
consumers vulnerable to exploits. *See, e.g.*, Kim Zetter, *Feds Admit Stingrays Can Disrupt Cell
Service of Bystanders*, Wired (March 1, 2015), http://www.wired.com/2015/03/feds-admit-
stingrays-can-disrupt-cell-service-bystanders/; Ashkan Soltani & Craig Timberg, *Tech Firms Try
to Pull Back the Curtain on Surveillance Efforts in Washington*, Wash. Post (Sept. 17, 2014),
http://www.washingtonpost.com/world/national-security/researcherstry-to-pull-back-curtain-on-
surveillance-efforts-in-washington/2014/09/17/f8c1f590-3e81-11e4-
b03fde718edeb92f_story.html; Pell & Soghoian, 28 Harv. J.L. & Tech 1, *supra*. Experts have
provided detailed information in congressional testimony about vulnerabilities in cellular
communications networks, "how cell-site simulators function[,] and what information they can
obtain from smartphones and other mobile devices" by exploiting those vulnerabilities. *See*
Bolstering Data Privacy and Mobile Security: An Assessment of IMSI Catcher Threats Before
the H. Comm. on Science, Space, and Tech., 115th Cong. 1 (2018) (written testimony of
Jonathan Mayer, Assistant Professor of Computer Science and Public Affairs, Princeton
University, and former Chief Technologist of the Federal Communications Commission

Enforcement Bureau) (attached as Exhibit P to Wessler Decl.)[16]. Disclosures by ICE in this very

litigation include DHS's public identification of the mobile wireless network vulnerabilities in

the United States and ways they are exploited by cell site simulator technology. *See* Department

of Homeland Security, Cellular Threats Briefing for the Federal Mobile Technology Forum at 5–

8, 10–11, 14, 17–19 (Feb. 6, 2018) (attached as Exhibit Q to Wessler Decl.); Holzer Decl. ¶ 6

("The entirety of the document is a briefing on mobile wireless network vulnerabilities in the

United States. The slide deck covers specific vulnerabilities and common strategies for hacking

mobile wireless networks."). DHS and ICE's own policies governing cell site simulator use

discuss the "disruption of service[] when [cell site simulators] are in use," Franken

Communication at Bates Page 1174 (ECF No. 23-19, at 5). DHS Cell Site Simulator Policy (ECF

No. 23-1, at 6); ICE Cell Site Simulator Policy at 5 (Wessler Decl. Ex. C). And the FBI has

explained that it has "developed protocols based on legal requirements to operate CSSs [cell site

simulators] with minimum interference [to cellular communications] and limited to specific

targets. The CSSs are operated in constant motion at the lowest power level necessary to

accomplish the mission, minimizing interference and avoiding compromise or detection," and

are "configured to avoid interference with 911 calls." Letter from Assistant Att'y Gen. Stephen

E. Boyd to Sen. Ron Wyden, at 1–2 (Jan. 22, 2018) (attached as Exhibit R to Wessler Decl.) [17].

  Furthermore, the Holzer Declaration does not even attempt to justify the withholding of

information from the first page of the Franken Communication. *See* Holzer Decl. ¶ 8; Franken

Communication at Bates Page 1171 (ECF No. 23-19, at 2). Based on the information

surrounding that redaction, the subject of that withholding is presumably about whether DHS

---

[16] *Available at* https://docs.house.gov/meetings/SY/SY21/20180627/108486/HHRG-115-SY21-Wstate-MayerJ-20180627.pdf.

[17] *Available at* https://docs.fcc.gov/public/attachments/DOC-355228A2.pdf.

distinguishes between the seriousness of the criminal offense in determining whether to deploy CSS technology, not about cellular network vulnerabilities. Nor does the Holzer Declaration attempt to justify redaction of a partial sentence in the middle of page four of the Franken Communication, which appears to discuss the number of cell site simulators possessed by ICE, nor a footnote at the bottom of that page. Franken Communication at Bates Page 1174 (ECF No. 23-19, at 5). Of course, a congressional committee report previously detailed the number of cell site simulators in ICE's possession, so the harm of providing that information in the Franken Communication is difficult to imagine. House Oversight Committee Report (ECF No. 23-2, at 14–15).

## II.   *In camera* review of the documents at issue is appropriate.

Alternatively, Plaintiff respectfully asks the Court to conduct an *in camera* review of the two documents at issue. In FOIA cases, courts have broad discretion to "examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions." 5 U.S.C. § 552(a)(4)(B).

*In camera* review is appropriate where "agency affidavits are insufficiently detailed to permit meaningful review of exemption claims; the number of records involved is relatively small; a discrepancy exists between an agency's affidavit and other information that the agency has publicly disclosed; and when the dispute turns on the contents of the documents, and not the parties' interpretations of the documents." *People for the Am. Way Found. v. Nat'l Park Serv.,* 503 F. Supp. 2d 284, 307 (D.D.C. 2007) (internal punctuation and quotation marks omitted); *see also N.Y. Times Co. v. Dep't of Justice*, 872 F. Supp. 2d 309, 315 (S.D.N.Y. 2012) (stating that *"in camera* inspection is particularly appropriate where, as here, the number of documents is relatively small" (citation and internal quotation marks omitted)). Each of those

factors applies here. As described above, the agency's supporting declaration is vague and conclusory with respect to both documents at issue, and is undermined by publicly available information, some of which was released by ICE and DHS. The dispute in this case now boils down to a total of three pages with redactions, contained in two short documents. And the factual dispute here largely turns on whether the two documents contain techniques or procedures that are not publicly known, which the Court can expediently determine by comparing the redacted text to the information and supporting documents identified by Plaintiffs in this brief.

In short, *in camera* review is an appropriate and efficient way to determine if the government's withholding is proper under Exemption 7(E).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' cross-motion for summary judgment and grant the ACLU's motion and supplemental motion for summary judgment. Alternatively, the Court should order ICE to submit unredacted versions of the Wyden Letter and Franken Communication for *in camera* review before granting summary judgment to the ACLU.

June 26, 2020

Respectfully submitted,

/s/ *Alexia Ramirez*
Alexia Ramirez
Nathan Freed Wessler
Brett Max Kaufman
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654
aramirez@aclu.org
nwessler@aclu.org
bkaufman@aclu.org

Robert Hodgson
Christopher Dunn
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300
rhodgson@nyclu.org
cdunn@nyclu.org

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of June, 2020, I electronically filed the foregoing

Reply in Support of Plaintiff's Motion for Summary Judgment and Opposition to Defendants'

Cross-Motion for Summary Judgment and the accompanying Declaration of Nathan Freed

Wessler using the Court's CM/ECF system, which effects service upon counsel for Defendants.


 /s/ *Alexia Ramirez*
Alexia Ramirez
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654
aramirez@aclu.org